THE STATE, EX REL. J. STERLING MORTON, V. WALLACE STEVENSON, COUNTY CLERK OF OTOE COUNTY.

1. Constitutional Law: INCREASE OF NUMBER OF DISTRICT JUDGES. Under the provisions of section 11 of article VI. of the constitution, the legislature of 1885 had the power to provide by law for the election of a second judge of the district court for the second judicial district, notwithstanding that the legislature of 1883 had provided by law for the election of an additional judge for the third judicial district, and for the creation of four new judicial districts and for the election of judges for each thereof.

2. ———. A court will not ordinarily listen to an objection made to the constitutionality of an act of the legislature by a party whose rights it does not affect, and who has therefore no interest in defeating it. Cooley's Con. Lim., 5 Ed., 197.

State v. Stevenson.

3. ———. There is a wide difference between the weight and au-
thority to be accorded and given to an act which has passed the
legislature by a constitutional majority and through all stages
of legislation, and been approved by the executive, although it
may be inimical to some provision of the constitution, and a
paper which, without having passed the legislature, has, through
accident or design, found its way to a place among the authen-
ticated statutes. The former should be respected and obeyed
until declared invalid by the judiciary in a proper legal pro-
ceeding, while the latter may be disregarded by all.

ORIGINAL application for mandamus to compel respond-
ent to issue and deliver to the sheriff of Otoe county no-
tices of the election to be held in said county Nov. 3, 1885,
in which shall be named the office of judge of the district
court for the second judicial district.

*Charles W. Seymour, Frank P. Ireland,* and *Edwin F.
Warren,* for relator.

*Frank T. Ransom* and *John C. Watson,* for respondent.

*Mason & Whedon,* for J. L. Mitchell, intervenor.

COBB, CH. J.

The principal question raised by the motion and affida-
vit of the relator and the answer of the respondent in this
case is, whether the act of February 24, 1885, entitled " An
act to amend sections one and three of an act entitled ' An
act to apportion the state into judicial districts, and for the
appointment and election of officers thereof,' approved
February 24, 1883," approved March 10, 1885, is in vio-
lation of any provision of the constitution of the state.
Comp. Stat., Ch. 5, § 8.

I assume it to be universally conceded that all legislative
power of the people of this state not granted to the United
States or prohibited to the legislature, or reserved to the
people themselves in the constitution of the state, either

27

expressly or by implication, resides in the legislature. It will not be contended that the passage of the act in question was not the exercise of legislative power, nor that it was the exercise or attempt to exercise any part of the legislative power granted to the congress of the United States. Was it the exercise of a power prohibited to the legislature or reserved to the people themselves in the constitution, either expressly or by implication?

Section 11 of article VI. of the constitution contains the provision of that instrument which is claimed to be violated by the passage of the act under consideration. It reads as follows: "The legislature, whenever two-thirds of the members elected to each house shall concur therein, may, in or after the year one thousand eight hundred and eighty, and not oftener than once in every four years, increase the number of judges of the district courts and the judicial districts of the state."

Although the language of this section is that of a grant of power, yet it being found in an instrument which deals in prohibitions, restrictions, and reservations, and not in grants of power, it must be construed to be a restriction upon the general power of legislation inhering in the people as represented in the legislature.

The power of legislation on the subject under consideration is, by the terms of the above section, restricted in more respects than one. It is not to be exercised at all until the lapse of four years after the general taking effect of the constitution, and then only by the concurrence of two-thirds of the members elect of each house of the legislature. To these restrictions it is claimed that the language of the section adds another, to-wit, that the power of legislating to effect the above objects becomes exhausted and lies dormant until the lapse of another term of four years. While it is not my present purpose to deny the above construction, I will say that if it is the true meaning of our constitution— if one legislature may pass an act which the next legisla-

ture may not amend or repeal, or if one legislature possesses a power which is denied to its successor, then I think that it presents an anomaly in fundamental law-making, and is an exception to an otherwise universal rule.

But in the view that I take of the section of the constitution now under consideration, the power granted to the legislature, "Whenever two-thirds of the members elected to each house shall concur therein," to, "in or after the year one thousand eight hundred and eighty, and not oftener than once in every four years, increase the number of judges of the district courts," was not only not exhausted by the passage of the act of February 24, 1883, but is not exhausted by that of 1885.

Section one of the article of the constitution under consideration provides that, "The judicial power of this state shall be vested in a supreme court, district courts," etc. Section nine provides that, "The district courts shall have both chancery and common law jurisdiction, and such other jurisdiction as the legislature may provide," etc. Section ten divides the state into six judicial districts, and provides that, "In each of which shall be elected by the electors thereof one judge, who shall be judge of the district court therein," etc. Then follows section eleven. That part of which is applicable to the question being examined is herein quoted.

It will thus be seen that the constitution provided for six district courts, and that until the year 1880, and until the legislature by a two-thirds vote of each house should otherwise provide, there should be but one judge to each of said courts. But that after the year 1880, and by the legislative majority therein specified, the number of such judges might be increased. The number of such judges had only been fixed by the language, "The state shall be divided into six judicial districts, in each of which shall be elected by the electors thereof one judge." It is also true that, by the terms of the eleventh section, in and after the

year 1880 the legislature in the manner stated may increase the number of the judicial districts, and that would indirectly increase the number of judges, by force of the language of the tenth section, authorizing the electors of each of the original districts to elect one judge. But the language of the section empowers the legislature to directly "increase the number of judges of the district courts," and surely when a power is granted to do a thing directly we need not justify the doing of it under another indirect and constructive grant of power. There being then one judge provided for each of the six district courts, the legislature may, in or after 1880, increase this number. May they increase it in one district, or in any or all of them? Obviously, not only from the language used but from the very nature of the subject matter, in any or all of the districts. But not in any oftener than once in four years. Under this power the legislature of 1883 increased the number of the judges of the district court of the third district. But did such action exhaust the power of that legislature or any of its successors to increase the number of such judges in any or all of the other judicial districts not oftener than once in four years? I think not.

If this construction and these conclusions are correct, then the act of 1885, under discussion, as well as the act of February 24, 1883, are fully warranted by the provision of the constitution above quoted. The writer is of the opinion that there are other grounds upon which such legislation may be justified and defended against the charge of being inimical to the constitution of the state, but having, to my own satisfaction at least, found in the above considerations ample authority under the constitution for the legislation under consideration, the discussion of this branch of the case will not be further pursued.

There seemed to be a general desire on the part of the bar, the press, and the people throughout the state, and especially of the second and third judicial districts, that the

State v. Stevenson.

·question of the constitutionality of the act of March 10, 1885, should be examined and decided by this court. Otherwise I should not have deemed such examination and decision necessary for the purpose of ascertaining the duty of the respondent to obey the law as it came from the legislative and executive branches of the state government. While it will not be denied that any citizen may invoke the provisions of the constitution, state or federal, for the assertion or protection of any of his rights, either of person, family, or property, yet it may well be doubted that the incumbent of a ministerial office, created by and whose current duties rest solely upon legislative authority, may invoke the provisions of the constitution as a justification ·of his refusal to discharge a plain statutory duty. Under our present system, lawsuits may be prosecuted or defended only by a real party in interest. Such party only has the right to make a record which will render the question litigated *res adjudicata*. This proposition is clearly established by authorities cited by counsel for the intervenor. The respondent can have no interest greater or different from that of any other citizen in the constitutional question which he invokes. If he has, it is so small that it is sufficiently answered by the maxim "*De minibus non curat lex.*"

· In the case of *State, ex rel. Huff, v. McLelland, ante* p. 236, this court refused to issue a mandamus to compel the respondent, who is county clerk of Nance county, to insert in the notice of the annual election among the officers to be elected that of register of deeds, upon its being made to appear that the act of 1885, entitled "An act to provide for the election of register of deeds, and to define his duties and fix his compensation," etc., when introduced and passed both branches of the legislature, contained a provision for the election of a register of deeds only in counties having 15,000 inhabitants, but in the enrollment was so changed as to apply to "each county having a popula-

tion of 1,500 inhabitants or more;" the county of Nance having a population of more than 1,500 and less than 15,-000 inhabitants.

The question presented in that case was not whether the law as printed in the statute book was inhibited by the terms of the constitution, but whether it had passed the legislature at all. And I think there is a wide difference between the weight, character, and consideration to be given to a paper which has passed through all the stages of legislation in due form, and been approved by the executive and placed in the proper custody, although it may be of a character inhibited by the terms of the constitution, and a paper which without having been considered or passed by the legislature has, through accident or design, found a place among the laws. The former should be respected and observed until declared invalid by the judiciary in a proper legal proceeding, while the latter may be disregarded by all.

A writ of mandamus will issue as prayed.

JUDGMENT ACCORDINGLY.

THE other judges concur.