IN RE LEWIS A. GROFF ET AL.

1.  **Constitutional Law**:  DISTRICT JUDGES.  A bill to reapportion the state into judicial districts, and to provide judges therefor,  passed the legislature in due form, but before being signed by the governor was changed, reducing the number of judges to one in the second district.  *Held*, That the act being complete in itself as to the first, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth districts and capable of being executed, was not affected by the invalidity of that part of the act relating to the second district.  *State v. McLelland*, 18 Neb., 243;  *State v. Robinson*, 20 Id., 96, distinguished.  That the provision in regard to the second district was null and void.

2.  ——: ——.  The act of 1885, providing for two judges in the second district, is valid, and the number of such judges cannot, under the constitution, be changed oftener than every four years.

3.  ——: ——:  APPROPRIATION.  The appropriation made by the legislature of $95,000 for the payment of salaries of nineteen judges of the district court, is an appropriation in gross to be applied as far as necessary to the payment of the salaries of all judges of the district courts.

MAXWELL, CH. J.

This case. is submitted to the court upon an agreed statement of facts, and, as the action is real and the facts agreed upon appear to bring the case within the provisions of section 567 of the code of civil procedure, it is our duty to consider it and 'render a decision upon the questions involved.   The agreed statement is as follows :

"*To the Honorable, the Judges of the Supreme Court of the State of Nebraska:*

"Your petitioners, the. undersigned, respectfully represent and show unto your honors that pursuant to the annexed act of the legislature of this state, your petitioners, Lewis A. Groff and M. R. Hopewell, have been by the governor of this state duly appointed each as one of the

judges of the district court for the third judicial district of this state, and have duly qualified and entered upon the discharge of their duties as such; and that in like manner and pursuant to the same authority your petitioner, William Marshall, has been appointed and has qualified and entered upon the discharge of his duties as one of the judges of the district court for the fourth judicial district; and that in like manner your petitioner, T. O. C. Harrison, has, pursuant to the same authority, been appointed and has qualified and entered upon the discharge of his duties as one of the judges of the ninth judicial district; that your petitioner, Stephen B. Pound, was duly elected judge of the district court of the second judicial district at the general election in October, 1875, and has since been twice elected to said office upon the expiration of his term, so that he has held said office continuously from the date of his said first election down to the present time, and still does continue to occupy and enjoy the same; and that pursuant to an act passed and approved March 10th, 1885, the Hon. Samuel M. Chapman was, at the general election in November, 1886, duly elected to the office of additional judge in said second judicial district, and has since duly qualified and entered upon his duties as such, and still continues to hold and enjoy said office.

"And your petitioners further show unto your honors that at the twentieth session of the legislature of this state, the only appropriation made for the payment of salaries of judges of the district court was as follows:

"'H. R. No. 446.

"'An act to provide for the payment of the salaries of the officers of the state government,

*    *    *    *

"'DISTRICT COURT.

Salary of nineteen judges at $2,500.......$47,500 $95,500
Salary of nineteen stenographers at......
$1,500..................................$28,500 $57,000.'

"And your petitioners further show that certain doubts and controversies have arisen as to the validity and construction of the above mentioned acts of the legislature, insomuch that the titles of your said petitioners and of said Chapman to their respective offices have been drawn in question, and as to the right of your petitioners to receive and draw their respective salaries as incumbents of said offices, and as to the duty and authority of your petitioner, H. A. Babcock, auditor of state, to draw and deliver his warrant upon the treasurer of the state for the payment of same.

"And your petitioners further show that said doubts and controversies have arisen from the following facts appearing upon the legislative records of this state, to-wit:

"First. That said act first herein mentioned was introduced into the senate at said twentieth session as a measure entitled, 'Senate File No. 174. A bill for an act to apportion the state into judicial districts, and for the appointment and election of officers thereof.' That by the bill so introduced the county of Lancaster, being a part of the territory theretofore comprised in the second judicial district, was constituted a district by itself, bearing that number, and the counties of Cass and Otoe, being the remainder of said territory, were constituted a district by themselves and numbered the eleventh; and by a proviso it was declared that in each of said districts there should be one judge, and that in the first, fourth, ninth, and seventh districts each, there should be two judges; that afterwards, by amendment, the clause creating said eleventh district was stricken out and the counties of Cass and Otoe restored to the second district; that thereafter the bill was by the house so amended as to strike the said first district from the clause providing that in each of certain districts there should be two judges; that thereafter the bill was so amended by the house that the second district was inserted in the clause of the bill providing that in each of certain districts there

should be two judges, and that thereafter a further amendment was made by the house by which the first district was also inserted in said clause, and that as so amended the bill was passed by the house and concurred in by the senate and ordered to be enrolled so as to incorporate both of said amendments; but that, by some fault or oversight, the amendment including the second district in said clause was omitted by the person or persons entrusted with the enrollment thereof, so that the same was by inadvertence presented to the governor and signed by him without said omission having been discovered.

"Second. That said first mentioned act does not in express terms repeal or refer to said act of March 10th, 1885.

" Your petitioners therefore respectfully pray that your honors will take into due consideration and advise your petitioners upon the following matters touching this present inquiry, and necessary for your petitioners to be informed upon in order that grave and important interests, both of the public and of individuals, may not be put in jeopardy.

" I. Is the said first named act valid for any purpose or to any extent?

" II. Is said act, on account of said amendment being omitted in enrollment, invalid as respects the second judicial district alone?

"III. If said act is not invalidated, either as a whole or as respects said second judicial district, on account of the omission of said amendment, does the same amend, repeal, or supersede the provisions of the act of March 10th, 1885, creating an additional judge in the second judicial district? *Smails v. White*, 4 Neb., 353.

" V. The object of this act being to increase the number of the district judges in the state, was it competent for the legislature by that measure to ' vacate the office of any judge?' Sec. 2, Art. VI. of the constitution.

"VI.   The constitution having made appropriation to pay the salaries of all the judges whose offices were created by that instrument, should not the legislative appropriation be treated as in addition thereto and intended to provide for the payment of the salaries of judges whose offices are created by law?   *State, ex rel. Roberts, v. Weston,* 4 Neb., 216.

"VII.   The office of the district judge, being created by law, does not the constitution appropriate the salary therefor in the same manner as that for the six judges whose offices were created by the constitution?

"VIII.   Should not the legislative appropriation for salaries of district judges and stenographers be treated as an appropriation in gross to be drawn upon without reference to apportionment to particular district?

"LEWIS A. GROFF.

"M. R. HOPEWELL.

"WILLIAM MARSHALL.

"T. O. C. HARRISON.

"S. B. POUND,

By JOHN H. AMES,

G. M. LAMBERTSON,

*Attorneys.*

"S. M. CHAPMAN,

By G. W. COVELL,

J. B. STRODE,

*Attorneys.*

"H. A. BABCOCK,

*Auditor P. A.*"

The statute to apportion the state into judicial districts is as follows:

## "S. F. 174.

" An act to apportion the state into judicial districts, and for the apportionment and election of officers thereof.

" *Be it enacted by the Legislature of the State of Nebraska:*

"Section 1.   The state of Nebraska shall be divided into twelve judicial districts, as follows:

"First District—Richardson, Nemaha, Johnson, Pawnee, and Gage counties.

"Second District—Lancaster, Otoe, and Cass counties.

"Third District—Douglas, Sarpy, Washington, and Burt counties.

"Fourth District—Saunders, Butler, Colfax, Dodge, Platte, Merrick, and Nance counties.

"Fifth District—Saline, Jefferson, Fillmore, Thayer, Nuckolls, and Clay counties.

"Sixth District—Seward, York, Hamilton, and Polk counties.

"Seventh District—Cuming, Stanton, Wayne, Dixon, Dakota, Madison, Antelope, Pierce, Cedar, and Knox counties, Winnebago and Omaha reservations, and the unorganized territory north of Knox county.

"Eighth District—Adams, Webster, Kearney, Franklin, Harlan, and Phelps counties.

"Ninth District—Boone, Hall, Wheeler, Greeley, Garfield, Loup, Valley, Howard, and Blaine counties, and the unorganized territory west of Blaine county.

"Tenth District—Buffalo, Dawson, Custer, Lincoln, Logan, Sherman, Keith, and Cheyenne counties, and the unorganized territory west of Logan county.

"Eleventh District—Gosper, Furnas, Frontier, Red Willow, Hayes, Hitchcock, Chase, and Dundy counties.

"Twelfth District—Holt, Brown, Keya Paha, Cherry, Sheridan, Dawes, Sioux, and Box Butte counties, and the unorganized territory north of Holt and Keya Paha counties.

"*Provided*, That in the third district there shall be four judges of the district court; that in each of the following districts, to-wit: first, fourth, seventh, and ninth districts, there shall be two judges of the district court, and in each of the other of said districts there shall be one judge of the district court. All judges shall be elected·for the term of and hold their office for four years from and after the first day of January next succeeding their election. The said judges shall be elected at the general election to be held in November, A.D. 1887, and every four years thereafter. Such judges shall have equal power, and shall each perform such duties as are now provided by law, or such as may hereafter be imposed upon them by law, and it shall be the duty of such judges to so divide and arrange the business of said court between them that the trial of causes may be speedy. In each district having more than one judge of the district court, there shall be drawn in the manner now provided by law a panel of forty-eight jurors to serve as jurors in such court; *Provided*, That in any county in such districts where such number of jurors may not be required, the judges may, by appropriate rule, provide for the drawing of a less number; and *Provided*, *further*, When there shall be more than two judges of the district court in any one district, they may provide, by appropriate rule, for the drawing of a greater number of jurors.

"Sec. 2. The judges now in office shall hold their position and perform the duties of their office in the districts hereby created in which they may reside, until the expiration of the term for which they were elected.

"Sec. 3. The governor shall appoint judges to fill all vacancies created by this act, including the additional judges as provided in section 1 of this act, who shall hold their office until the next general election, when such vacancies shall be filled by election in same manner as such officer is elected in other districts.

"Sec. 4.   All acts or parts of acts in conflict with the provisions of this act are hereby repealed.

"Sec. 5.   Whereas, an emergency exists, this act shall take effect and be in force from and after its passage.

"H. H. SHEDD,
"President of the Senate.

" Attest:

"WALT. M. SEELY,
"Secretary of the Senate.

"N. V. HARLAN,
"Speaker of House of Representatives.

" Attest:

"BRAD. D. SLAUGHTER,
"Chief Clerk of House of Representatives.

"Approved March 31, 1887.
"JOHN M. THAYER,
"Governor."

The testimony before us shows that the provisions of the above act as here set out, so far as they relate to all the districts except the second, were properly passed by both houses of the legislature and signed by the governor; that as to the second district, the provision relating thereto as passed by both houses provided for two judges, but that the bill as signed by the governor contained a provision for only one judge.

Three questions necessarily arise out of the facts stated:

First.   Does the invalidity of the provision as to the second district affect the whole act and render it void?

In State v. McLelland, 18 Neb., 237, it was held that when a bill providing that, in each county containing not less than "15,000" inhabitants, a register of deeds should be elected, etc., had passed both houses of the legislature, but before being signed by the governor had been changed to read "1,500" and signed in that form, was of no force or effect; and the same ruling was had in State v. Robinson, 20 Neb., 96.   These cases were argued by able attorneys

and were carefully considered, and the conclusion reached, in our view, is the correct one and it will be adhered to.

But do those decisions affect the entire bill in this case? In those cases it will be observed that there was but a single question involved, viz.: A register was to be elected in each county containing not less than 15,000 inhabitants. In the case at bar, however, there are twelve distinct, minor subjects, or propositions, embraced in the bill; each proposition prescribes the extent of territory comprising a judicial district and the number of judges to preside therein. In effect there are twelve bills all embraced in one title, dividing the state into judicial districts and providing for judges in such districts. It will be seen, therefore, that a defect in one proposition does not necessarily affect or defeat the others.

This question was before the supreme court of South Carolina in *State v. Platt*, 2 Richardson, 150. On the first of March, 1870, the legislature of that state passed an "act to revise, simplify, and abridge the rules, practice, pleadings, and forms of courts in that state." The nineteenth section of the enrolled act, to which the great seal of the state was affixed, and which was signed in the senate chamber by the president of the senate and the speaker of the house of representatives, and received the approval of the governor, provided that the courts for the county of Barnwell should be held at Barnwell; but it appeared by the journals of the two houses of the general assembly that the same section of the bill, as it finally passed both houses, provided that the courts for that county should be held at Blackville. By the law as it stood at the passage of the act the last named place was the county seat of Barnwell county. The court held that the nineteenth section of the act was void, and consequently that Blackville remained the county seat of Barnwell county. It is said (p. 155): "In order to determine whether an act has passed through all the requisite stages of legislative

progress, its identity in each of these stages must be determined. If the formalities of enrollment do not prevent us from looking into the journals in order to see that the bill had its proper reading, of what value will that be to us if we are estopped by the enrollment from inquiry as to what bill the journals have relation? To give full force and effect to the constitution, if an issue of identity is raised, we must look into the bill or act at each step of its progress, to determine that that which has received part of the formalities requisite to its validity as a law is the same with that which has received the residue of such formalities. Hitherto this question has been considered in the simplest form in which it is likely to arise, that is, upon the supposition that the act, regarded as a whole, is not the same, as appearing by the enrollment, with that which passed through the preceding stages of enactment. In regard to this assumed case, we have no doubt but that we may look at the journals for the purpose of ascertaining the action of the houses, and into any evidence that may be appropriate to show the nature of the bill, the subject of such action. A more difficult question here presents itself. When, as in the present case, the act, as a whole, has unquestionably passed through all the requisite stages, but some part, either of a section or clause, or, as in the case at hand, a mere word, is found to constitute the difference between the act in its different stages of progress, it is necessary to look beyond the expressions of the constitution to its substantial meaning and extent. As regards the general question, it is much simplified by the fact that the alleged error does not affect the general integrity or efficiency of the act, nor enter into any of the limitations and conditions by which the legislature sought to bound the scope and sphere of its provisions." That portion of the act which had been passed properly was sustained. To the same effect is *Jones v. Hutchinson*, 43 Ala., 725; *Peterman v. Huling*, 7 Casey, 436.

In *State v. Lancaster County*, 6 Neb., 474, it was held that if the constitutional portion of a statute was not dependent upon that which was unconstitutional, and was complete in itself and capable of being executed, it will be maintained. In that case the title of the bill was "An act to provide for township organization." Under that restrictive title the act provided for county officers, defined their duties, and provided for county organization and defined the corporate powers of a county.

The same rule was applied in *White v. The City of Lincoln*, 5 Neb., 515, where a portion of an act was sustained and a portion rejected as not conforming to the constitutional requirements; and so in *Holmburg v. Houck*, 16 Neb., 338; *State v. Lancaster County*, 17 Neb., 85; *State v. Hurds*, 19 Neb., 316, and *Ex parte Thomason*, 16 Neb., 239. We hold, therefore, that where a part of an act is not dependent upon that which is unconstitutional, and is complete in itself and capable of being executed, it will be maintained. So far as this act affects the eleven districts spoken of it fully complies with these conditions, and as to such districts must be sustained.

*Second.* Does the invalidity of the act in question, so far as it relates to the second district, affect either such district or the judges thereof?

Sec. 11, Art. VI. of the constitution, provides that, "The legislature, whenever two-thirds of the members elected to each house shall concur therein, may, in or after the year one thousand eight hundred and eighty, and not oftener than once in every four years, increase the number of judges of the district courts and the judicial districts of the state. Such districts shall be formed of compact territory and bounded by county lines, and such increase or any change in the boundaries of a district shall not vacate the office of any judge."

It will be seen that by the above section the legislature after the year 1880, and not oftener than once in every

42

four years, may increase the number of judges of the district courts and the judicial districts of the state, provided the change of boundary shall not vacate the office of any judge. During the session of the legislature in 1883, certain leading citizens of the third judicial district, together with members of the judiciary committee of each house, submitted to the judges of the supreme court—Judge Lake then being on the bench, the bill then pending before the legislature to increase the number of judges in the third district to two, it being alleged that that number was necessary to transact the business of that district. The section of the constitution above quoted was carefully considered, and it was the unanimous opinion of the judges that the constitution provided first, for an increase of judges in a district, and also for an increase in the number of judicial districts, in both cases under certain restrictions. The bill providing for two judges of the third district was thereupon passed and became a law, and Judge Wakeley was appointed the second judge in that district.

The question came before the supreme court in *State v. Stevenson*, 18 Neb., 416. During the session of the legislature in 1885 an act was passed for two judges in the second judicial district. This act was duly approved, and Judge Mitchell appointed judge. The case of *State v. Stevenson* was in fact a contest over the validity of the act providing for a second judge in the second district. It was ably argued and carefully considered, and the power of the legislature was sustained.

In the carefully prepared and able opinion of Judge Cobb in that case, pp. 418–420, it is said: "Although the language of this section is that of a grant of power, yet it being found in an instrument which deals in prohibitions, restrictions, and reservations, and not in grants of power, it must be construed to be a restriction upon the general power of legislation inhering in the people as represented in the legislature.

" The power of legislation on the subject under consider-ation is, by the terms of the above section, restricted in more respects than one. It is not to be exercised at all until the lapse of four years after the general taking effect of the constitution, and then only by the concurrence of two-thirds of the members elect of each house of the leg-islature. To these restrictions it is claimed that the lan-guage of the section adds another, to-wit, that the power of legislating to effect the above objects becomes exhausted and lies dormant until the lapse of another term of four years. While it is not my present purpose to deny the above construction, I will say that if it is the true mean-ing of our constitution—if one legislature may pass an act which the next legislature may not amend or repeal, or if one legislature possesses a power which is denied to its successor, then I think it presents an anomaly in funda-mental law-making, and is an exception to an otherwise universal rule. But in the view I take of the section of the constitution now under consideration, the power granted to the legislature, 'Whenever two-thirds of the members elected to each house shall concur therein,' to, ' in or after the year one thousand eight hundred and eighty, and not oftener than once in every four years, increase the number of judges of the district courts,' was not only not exhausted by the passage of the act of February 24, 1883, but is not exhausted by that of 1885.

" Section one of the article of the constitution under con-sideration provides that, 'The judicial power of this state shall be vested in a supreme court, district courts,' etc. Sec-tion nine provides that, 'The district courts shall have both chancery and common law jurisdiction, and such other jurisdiction as the legislature may provide,' etc. Section ten divides the state into six judicial districts, and provides that, 'In each of which shall be elected by the electors thereof one judge, who shall be judge of the district court therein,' etc. Then follows section eleven. That part of

which is applicable to the question being examined is herein quoted. It will thus be seen that the constitution provided for six district courts, and that until the year 1880, and until the legislature by a two-thirds vote of each house should otherwise provide, there should be but one judge to each of said courts. But that after the year 1880, and by the legislative majority therein specified, the number of such judges might be increased. The number of such judges had only been fixed by the language, 'The state shall be divided into six judicial districts, in each of which shall be elected by the electors thereof one judge.' It is also true that, by the terms of the eleventh section, in and after the year 1880, the legislature, in the manner stated, may increase the number of judicial districts, and that would indirectly increase the number of judges, by force of the language of the tenth section, authorizing the electors of each of the original districts to elect one judge. But the language of the section empowers the legislature to directly 'increase the number of judges of the district courts,' and surely when a power is granted to do a thing directly we need not justify the doing of it under another indirect and constructive grant of power. There being then one judge provided for each of the six district courts, the legislature may, in or after 1880, increase this number. May they increase it in one district, or in any or all of them? Obviously, not only from the language used but from the very nature of the subject-matter, in any or all the districts. But not in any oftener than once in four years. Under this power the legislature of 1883 increased the number of the judges of the district court of the third district. But did such action exhaust the power of that legislature or any of its successors to increase the number of such judges in any or all of the other judicial districts not oftener than once in four years? I think not. If this construction and these conclusions are correct, then the act of 1885, under discussion, as well as the act of February 24, 1883, are

fully warranted by the provisions of the constitution above quoted. The writer is of the opinion that there are other grounds upon which such legislation may be justified and defended against the charge of being inimical to the constitution of the state, but having, to my own satisfaction at least, found in the above considerations ample authority under the constitution for the legislation under consideration, the discussion of this branch of the case will not be further pursued."

It is apparent that the constitutional convention intended to provide adequate means to administer the law in all the counties in the state. It had already provided, in section 13, article I. of the constitution, that "All courts shall be open, and every person, for any injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and justice administered without denial or delay." These provisions would be meaningless unless the legislature was clothed with power to furnish the necessary tribunals for the prompt disposition of cases pending in the courts. The convention, therefore, with the example of Cleveland, Cincinnati, and other cities, where there are a number of judges of courts of record of equal power holding separate and distinct courts at the same time, provided for such courts in this state, should the necessity arise; of which necessity the legislature—the representatives of the people—were to be the judges. The act of 1885, therefore, increasing the number of judges in the second district to two, is valid.

The second section of the act of 1887, above copied, provides that the judges now in office shall continue to hold their respective offices till the expiration of their terms, so that even if this act was valid as respects the second district, there could be no doubt as to the rights and duties of the judges in such district. But in addition to the prohibition against changing the number of judges oftener than once in four years, the provision reducing the number of judges

to one, not having passed both houses of the legislature, is void. It will be observed, too, that there is no attempt to repeal the act of 1885 providing for two judges in the second district, the language being, "All acts or parts of acts in conflict with the provisions of this act are hereby repealed." The act of 1885 is not referred to, nor, so far as the bill shows, is it affected in any manner. It is unnecessary, however, to decide this question as it does not arise in the case.

*Third.* It is very evident that the appropriation to provide for the salaries of nineteen judges for two years, $95,-000, is an appropriation in gross; that is, so much money is appropriated for the payment of the judges of the district courts. No one judge can claim his salary under such appropriation to the exclusion of another, but in case of a deficiency in the amount appropriated it must be divided *pro rata* among the different judges. It is probable that, under section 25, article 16 of the constitution, even in the absence of an appropriation the auditor would be required to draw warrants for the salaries of the officers named in the constitution, but as in our view the sum appropriated for the payment of the district judges applies to all the judges alike, the question does not arise and therefore will not be decided.

The other questions which the court is requested to answer do not properly arise out of the facts stated, and an answer if given would be mere dicta; therefore they will not be decided.

ALL of the judges concurred.