DANIEL W. ILER v. CHARLES ROSS ET AL.

FILED MAY 21, 1902. No. 12,327.

1. **Metropolitan Cities:** CHARTER: ORDINANCE: SANITARY REGULATIONS: LICENSE. Under the provisions of the charter act governing cities of the metropolitan class, the authorities thereof, for the purpose of protecting and preserving the public health, comfort and welfare, are empowered to enact by ordinance all necessary and reasonable regulations for the collection and removal of all garbage, filth and other noxious and unwholesome substances, ashes, stable manure, rubbish, and other waste and refuse matter accumulating in centres of population, and which, without such regulations, would become nuisances, menacing to the comfort and health of the inhabitants of such cities, and to license persons engaged in such occupation or business.

2. **Exclusive Privilege by Contract.** Such cities may also, as incident to the power of regulation, grant an exclusive privilege by contract to one person to collect and remove under its own immediate direction and control and in pursuance of regulations enacted for that purpose, those noxious and unwholesome substances which are nuisances *per se*, and a menace to the public health.

3. **Legislature:** GUISE OF POLICE REGULATION: ARBITRARY INVASION OF PRIVATE PROPERTY. The legislature can not, under the guise

of police regulation, arbitrarily invade private property or personal rights. The test when such regulations are called in question is whether they have some relation to the public health or public welfare, and whether such is, in fact, the end sought to be attained. *Smiley v. MacDonald*, 42 Nebr., 5.

4. **Police Regulation:** Monopoly: City. It is not competent for the city, as a police regulation, to grant a monopoly to one individual, by contract, to enter upon the private premises of the inhabitants of the city, and at their expense collect and remove those innoxious substances, such as ashes, cinders, stable manure, or other substances not in themselves nuisances, but which if allowed to accumulate in unreasonable quantities would become such or which may be utilized for some beneficial purpose. Such an attempted exercise of power is in excess of the authority granted by the charter, an invasion of the personal and property rights of the. citizens, in restraint of trade, and unnecessarily creates a monopoly.

5. **Void Ordinance.** The section of the ordinance of the city of Omaha under consideration, *held* void and unenforceable because an attempted exercise of power in excess of the authority conferred by the charter governing such city.

Error from the district court for Douglas county. Tried below before Dickinson, J. *Affirmed.*

*W. J. Connell* and *W. H. Thompson,* for plaintiff in error.

*I. J. Dunn, contra.*

Holcomb, J.

The defendants in error, relators in the court below, sued out a writ of habeas corpus for the purpose of regaining their liberty from imprisonment in the city jail, where they were committed for the alleged violation of one of the ordinances of the city of Omaha; it being alleged as a ground for the issuance of the writ and contended at the trial that the section of the ordinance authorizing their conviction and imprisonment was null and void, and their detention, therefore, unlawful. A trial in the district court resulted in a judgment holding the section of the city ordinance under which the conviction was had void, and discharging the relators from custody. The respondent, as custodian of the prisoners under the

commitment issued on conviction in the criminal trial, prosecutes error proceedings in this court for the purpose of obtaining a reversal of the judgment discharging the relators from custody.

The question determined in the lower court, and the only one of a substantial character involved in the controversy, is with relation to the validity of an ordinance numbered 4462, of the city of Omaha, entitled "An ordinance regulating the collection and removal of dead animals, garbage, manure, ashes, filth, offal, night soil and other refuse matter, providing penalties for the violation of the provisions hereof, and repealing ordinances numbered 3735, 3869, 4008, and 4080." Section 1 of said ordinance, which is the one directly bearing on the subject, and which it is contended is void, provides that any person who shall collect or remove any dead animals, garbage, ashes, filth, offal, night soil or other refuse matter within the corporate limits of the city of Omaha, not having a contract with said city so to do, shall be deemed guilty of misdemeanor and upon conviction thereof shall be fined in any sum not less than $5 nor more than $20. The relators were charged and convicted of unlawfully collecting and removing garbage, ashes, filth and other refuse matter without having a contract with the city, contrary to the provisions of said section 1. The object of the ordinance, which is rendered obvious from a reading of the whole of it, is to empower the city to enter into an exclusive contract with some individual, association or corporation to collect and remove within the corporate limits of the city all of the substances, materials and objects mentioned in section 1, which, if allowed to accumulate in a city, would become a nuisance; to provide maximum charges therefor, to be paid by the owner or occupant of the premises from which removed; to regulate the collection and removal; and to punish any one engaging in such business without having a contract with the city therefor.

If the city is empowered to enact an ordinance provid-

ing that a contract shall first be entered into with it before any person is authorized to do any of the things prohibited, it follows as a legal sequence that the city may grant an exclusive right to one individual with whom it may enter into a contract and refuse to contract with all others; that is, if it is authorized to contract at all, it may lawfully contract with one or more, as may best suit its own views as to the propriety, necessity and terms upon which it will enter into such contractual relation with another. Over the objections of the city, and for the purpose of showing the city was incapacitated from contracting with the relators, there was offered at the trial of the cause in the court below and received in evidence a contract with one McDonald, giving to him the exclusive right to collect and remove within the corporate limits all of the things mentioned in section 1 of the ordinance. Aside, however, from this evidence, we regard it as altogether clear that, if the section of the ordinance mentioned is sustained as valid, it must be done on the theory that the city may lawfully provide by exclusive contract for one contractor alone to engage in the business of collecting and removing the garbage and other waste matter mentioned in the ordinance, and to exclude all others from such business by suitable penalties for a violation of the provisions of the act. In fact, counsel for plaintiff in error fairly and frankly meets the issue by asserting in his brief: "The right to grant an exclusive contract and privilege, which necessarily includes the right to deny the privilege to another, has been fully settled by the decisions of this court." The issue is thus directly presented as to the validity of the section of the ordinance under the provisions of which the relators were arrested, tried, convicted, and sentenced to imprisonment for its violation, the relators contending that such ordinance is void, as being an unwarranted invasion of private property rights in restraint of trade, creating a monopoly, and contrary to a sound public policy; while respondents maintain that it is a lawful exercise of the police powers invested in the

city by its charter for the protection of the health of the inhabitants of the city, and to preserve and promote the public comfort and welfare.

This is the only issue adjudicated in the trial court, and as it involves the substantial merits of the controversy, and goes to the very core of the subject of the litigation, we are disposed to confine ourselves in the consideration of the cause to this question alone, to the exclusion of all collateral matters. The only exception contained in section 1 as to the right of any person save the contractor therein provided for to remove any of the substances spoken of, is a proviso that the act shall not apply to anyone hauling their own stable manure from their own premises with their own team or teams, and also a proviso regarding the use of manure for lawns, gardens, etc., under certain regulations, not necessary to mention. By section 11 the word "garbage," as used in the act, is defined to mean all refuse matter, animal or vegetable. It will thus be observed that the act is most sweeping in its character, and in effect, if valid, prohibits any resident of the city himself, or by the employment of another, from undertaking the collection or removal of any or either of the substances mentioned from his own premises, save the one exception noted as to the removal of stable manure by the owner or occupant from his own premises with his own team. All waste material, all accumulation of rubbish of whatsoever character, which, in time, if allowed to accumulate in large quantities, would doubtless become a nuisance, to abate which the city might employ any lawful means, can be collected and removed only by the contractor of the city at the expense of the private owner or occupant of the premises, at charges not exceeding the maximum rate allowed by the ordinance. Can such sweeping powers be justified as a valid exercise of the police powers of the city under its charter authority? By section 54 of the city charter act, the corporation is empowered "to make and enforce all police regulations for the good government, general welfare, health, safety

and security of the city and the citizens thereof in addition to the police powers expressly granted herein and in the exercise of the police power may pass all needful and proper ordinances" (Compiled Statutes, ch. 12a), with provisions for penalties for violations of ordinances enacted under the provisions of said section. The right of a city, under charter acts such as the one we have quoted, to make all needful rules and regulations for the proper collection and removal of all forms of rubbish, waste and other refuse matter constantly accumulating in cities and towns, where the population is centred in a small territory, in order to protect the health of the inhabitants and preserve the public welfare, to provide the manner, method of collecting such material, and character of the vehicles in which the same shall be removed, and the place of depositing such refuse matter so as not to endanger the public health, and to license those engaging in such industry or business, seems so plain a proposition as to scarcely require elucidation or discussion, and is one on which the text writers and the utterances of all the courts are in entire harmony. Such regulation was clearly contemplated by the legislature in the enactment of the statute quoted from; and to that extent, at least, there is left no room for doubt or difference of opinion. *People v. Gordon,* 45 N. W. Rep. [Mich.], 658; *City of Ouray v. Corson,* 59 Pac. Rep. [Colo. App.], 876; *In re Vandine,* 6 Pick. [Mass.], 187; *Boehm v. City of Baltimore,* 61 Md., 259. In the last case cited it is said in the opinion: "The validity of these ordinances was not seriously questioned in argument. That they are a lawful and proper exercise of the power 'to preserve the health of the city and to prevent and remove nuisances,' does not admit of doubt. Such powers have been universally granted to municipal corporations in this country. In fact the preservation of the health and safety of the inhabitants is one of the chief purposes of local government, and reasonable by-laws, in relation thereto have always been sustained in England, as within the incidental authority of

such corporations." In this jurisdiction we are committed to the doctrine, from which we do not believe it wise to recede, although the authorities are divided, that as to those substances which are in themselves nuisances, and for the protection of the public health require speedy and prompt abatement and removal by the city, or some one by it authorized to perform the work, the exercise of the power is in its nature a public function, to be engaged in by the city in its own behalf or by the employment of such agencies as will best accomplish the desired result, and that regarding such matters the granting of an exclusive privilege by the city to one individual for the removal of such unwholesome substances is not an unlawful exercise of power, nor does it conflict with the principle of law opposed to the creation of monopolies or an invasion of personal rights. The power thus exercised is incidental to the right to prevent and abate nuisances for the better protection of the health of the inhabitants of the city, and to accomplish the desired result the corporation may adopt the method of acting through its own agencies, or one of its own choosing, and directly under its own direction and control. *Smiley v. MacDonald*, 42 Nebr., 5, is relied on by the city in the case at bar to sustain the ordinance under consideration. In that case, after quoting from the charter provisions as then existing, which it is to be noted are materially different from those of the present charter. it is said in the opinion, page 13: "It requires no argument to prove that the subject of the contract before us is within the strict letter of these provisions of the charter. * * * But the removal of the noxious and unwholesome matter mentioned in the contract tends directly to promote the public health, comfort, and welfare and is therefore a proper exercise of the police power." It is further held in the opinion that the fact of conferring an exclusive privilege was, as the case was presented, immaterial; that the power conferred by the charter on the city implied the right of the city to determine the means and agen-

cies best adapted to the end in view. The ordinance then under consideration was not by any means of such sweeping character as the one under consideration in the present case. Many rights there reserved to the property owner and occupant as to the disposition of rubbish, debris, and other waste material are by the latter ordinance entirely swept away. As that case was presented and determined, we think it goes no further than to hold that the noxious and unwholesome substances such as dead animals not killed for food, garbage in the strict sense of the word, and probably other substances which are nuisances *per se,* might lawfully be removed by the city, in its exercise of lawful authority, for the protection and preservation of the health, comfort and welfare of the inhabitants, or the same end might be accomplished by creating an exclusive agency under the direct control of its own officers to perform the work necessary for such result. This is also the extent of the decision in the Michigan supreme court in the case of *City of Grand Rapids v. De Vries,* 82 N. W. Rep. [Mich.], 269; also relied on in support of the contention of the respondent. In the case last cited was involved the question of the authority of the city, in the exercise of its police powers, to grant an exclusive license for the removal of garbage only. Under the ordinance then under consideration "garbage," as used therein, was defined to mean the refuse accumulation of animal or vegetable matter, liquid or otherwise, attending the preparation, use, cooking, dealing in, or storing meat, fish, fowl, fruit or vegetables. The court held this to mean such refuse and discarded matter of the kinds mentioned which in fact had been discarded and rejected as of no further use for any beneficial purpose for food of any kind, and that, when so considered, the substances were and should be regarded as in themselves nuisances, for the removal and abatement of which the city could lawfully, by ordinance, grant an exclusive license to one individual as an exercise of the police power for the benefit of the public health. It is

also held that the granting of an exclusive license to re-
move such unwholesome matter is not in restraint of
trade, such removal not being a business, trade or occu-
pation within the meaning of the word when used in stat-
ing the principle invoked for the purpose of having the
ordinance declared void as being in restraint of trade.

The principle on which rests the right of a city to grant
an exclusive privilege to collect and remove those noxious
and unwholesome substances which menace the public
health and endanger the welfare of the citizens seems to
be that not only the prevention and abatement of those
accumulations of substances which are in themselves nui-
sances and dangerous to the health of a community is
necessary and essential for the preservation of health;
but also because of their unwholesome and noxious char-
acter the proper and safe removal and disposition of such
substances must for the benefit of the public welfare, be
in such manner and methods, at such times, and over such
particular routes of travel as will best subserve the public
interests, and that this may best be accomplished when
such removal is under the direct control and immediate
supervision of the city authorities, or with an agency of
its own selection, with whom it may contract for such
purpose. It is as necessary that the abatement or removal
of the nuisance shall be accomplished speedily, in a par-
ticular manner, and by certain fixed agencies, ever ready
to act, and at all times under the control of the munici-
pality, as it is that such nuisance shall not be permitted
to exist in the first instance. It would, therefore, seem
that as to those things which are calculated to menace the
public health if not promptly and in a particular manner
disposed of, and are in their nature regarded as nuisances
within themselves, it is within the power of a city, for the
benefit of the public health, and as a police regulation.
not only to provide for the removal of such substances,
but also, and as incident of the power of regulation, to
grant an exclusive privilege to an individual or corpora-
tion by contract entered into for that purpose to perform

the work of removal in such manner and methods as will best accomplish the desired result. It appears reasonably clear that such results can be obtained more satisfactorily and with less danger and inconvenience to the health and comfort of the inhabitants by the employment of one who shall at all times be subject to the control and direction of the city, and be held directly responsible to it for any failure to perform in the proper manner and promptly all that shall be necessary to effectuate the desired object. What may be termed for convenience the "dead animal contract cases" illustrate the principle and the reasons therefor most forcibly. In *River Rendering Co. v. Behr.* 7 Mo. App., 345, it is held that a city ordinance is valid, when passed as a sanitary police regulation, granting the exclusive right to remove the carcasses of dead animals from the streets. It is said in the opinion: "The municipal legislature is especially charged with the preservation of the public health. That high duty lies in prevention rather than in cure. It would be poorly discharged, or not discharged at all if the surest and most well-known precautionary measures were not thoroughly put in practice against the introduction of disease. In a populous city, where large numbers of animals die every day, it is of the first importance that their carcasses be speedily removed from the centres of human habitation. The city authorities would be grossly derelict if they left the chances of removal to be determined by the owners of the animals or by the enterprise of possible purchasers. They are in duty bound to appoint special agencies for the purpose, and to render performance certain by whatever means their best judgment may suggest. If they find that this certainty can be secured only by confining the agency to a single person or corporation, upon terms of responsibility for a failure to perform, it is their duty and their privilege to so secure it. The agency so appointed is rather the instrument in the hands of the municipal authorities for the fulfillment of a public duty, than the beneficiary of an exclusive privilege." Says Mr. Justice

Field in *Alpers v. City and County of San Francisco*, 32 Fed. Rep., 503, 505: "There is no doubt that the contract between the plaintiff and the city and county of San Francisco is one within the competency of the municipality to make. It is within the power of all such bodies to provide for the health of their inhabitants by causing the removal from their limits of all dead animals not slain for human food, which otherwise would soon decay, and by corrupting the air, engender disease. And provisions for such removal may be made by contract, as well as the performance of any other duty touching the health and comfort of the city; its authorities always preserving such control over the matter as to secure an observance of proper sanitary regulations."

But in the exercise of police powers conferred upon cities for the benefit of the health of the inhabitants and to preserve the public welfare and comfort, and conceding the right to take possession and remove through its own agencies or by granting the exclusive privilege to one with whom they may contract for that purpose those substances which are inevitably and intrinsically nuisances and injurious and unwholesome, can an ordinance be upheld and justified as broad and of so sweeping a character as the one under consideration, which includes all accumulations of ashes, stable manure, rubbish, debris, etc., many different kinds of which may properly be regarded of some utility to the owner or others and which are not *per se* noxious and harmful? Is a city empowered to contract with one individual, and authorize him exclusively to go upon the private premises of the inhabitants, collect and remove at the owner's expense all such substances, and to make it a penal offense for another to engage in the performance of the same kind of labor? Can the city, merely by its fiat, declare all and every substance of the kind mentioned nuisances, and direct their abatement and removal through the agency of an exclusive contractor? The personal rights and property interests of the citizens have, with an unvarying rule, in all the author-

ities cited, been respected and preserved, and in *Smiley v. MacDonald*, 42 Nebr., 5, is announced the same rule in the last paragraph of the syllabus, wherein it is held: "The legislature can not, under the guise of police regulation, arbitrarily invade private property or personal rights. The test when such regulations are called in question is whether they have some relation to the public health or public welfare, and whether such is, in fact, the end sought to be attained." By the provisions of the ordinance under consideration neither the owner nor occupant of the premises nor a person employed for that purpose can haul or transport within the corporate limits of the city any of the substances included in the ordinance, even though such material might be utilized for some beneficial purpose. He is prevented from disposing of it in any manner, and must submit to its collection and removal by the city contractor in the manner and by the means pointed out in the ordinance. Stable manure has value not only for the purpose of fertilizing lawns and gardens in the city, but is also highly prized by the thrifty husbandman in agricultural communities, because it enriches the soil and increases the yield of the crops. Cinders and ashes may be and are regarded as useful for many purposes. Many other substances coming within the meaning of the language of the ordinance in the nature of debris, rubbish, and other waste material which might be specifically mentioned could probably be used for some beneficial purpose, and many others having no utility like those referred to are not within themselves nuisances and a menace to the health of the public. It is quite true their accumulation in unreasonable quantities and for unreasonable length of time would render them nuisances, and to prevent which all reasonable regulations may be imposed. These are all classed in the ordinance in the general category of dead animals, garbage, and other unwholesome and noxious substances, and made the subject of the same regulation under the provisions of the ordinance, and the right to collect and to remove all such material

50

and substances given exclusively to the city garbage contractor. Such attempted regulation is, in our judgment, unreasonable, oppressive and contrary to a sound public policy. The ordinance not only grants a monopoly, always odious in the eye of the law, without justification or necessity therefor as a sanitary measure for the protection and preservation of the public health, comfort and welfare, but is also an unwarranted invasion of the natural rights of the inhabitants of the city. It is true the banker, the merchant and the lawyer may remove from their own premises, and with their own teams, stable manure, but nothing else. The man without a team and the one who desires to earn an honest living in removing for others these things which are not in themselves injurious to health are completely debarred. The personal right of the individual must give way regarding all the matters mentioned to the exclusive right of the contractor to collect, transport and dispose of all such accumulations. Not only is the owner's property taken from him when he could perhaps dispose of it or make arrangements for its disposal to some advantage, but he is compelled to bear the expense of the taking. We can not believe such an ordinance can be justified and upheld by the application of any sound principle of law. In *Re Petition of Vandine*, 6 Pick. [Mass.], 187, 191, it is said: "If the regulation is unreasonable it is void; if necessary for the good government of the society it is good." In *State v. Hill*, 4 Municipal Corporation Cases [N. Car.], 111, it is held in the syllabus that an ordinance regulating scavenger work must be reasonable in its provisions and not necessarily interfere with natural rights; and if it does interfere with such rights the public necessity must appear. In the opinion it is said by the author: "The prisoner is not charged with carrying on the business of a public scavenger, but simply with doing the work for one man; and it is admitted in the argument that the effect of the ordinance would be to prevent the owner himself from removing the refuse from his own premises. This is clearly an interference

with a natural right, and, while this may be allowable on the ground of public necessity, some such necessity must appear, and the ordinance must be reasonable in its provisions,"— citing in support thereof *State v. Higgs*, 35 S. E. Rep. [N. Car.], 473; 1 Dillon, Municipal Corporations [4th ed.], sec. 319; 2 Wood, Nuisances [3d ed.], sec. 745; *Mayor v. Radecke*, 49 Md., 217. It is also there said, page 118, what is pertinent to the case at bar: "We do not say that the defendant, or even the owner of the premises, had the right to clean out their closets in a manner offensive to their neighbors, or detrimental to the public health and comfort. They would be subject to such reasonable regulations as were necessary to attain these ends. Nor do we say that the city might not, under reasonable regulations, require any one to take out license before acting as a public scavenger, or even do the work through its own officers." The right of reasonable regulation for the prevention of nuisances of every kind, and the method of removal through and over the streets of a city of all accumulations of refuse matter, rubbish and other waste material for the purpose of sanitation and in the interest of the general health and comfort of the inhabitants, should be and is fully recognized. It is but the exercise of an authority properly appertaining to a municipality in the interest of the public, and to promote and preserve the welfare and convenience of all the people; but there must be a line of demarcation beyond which the authorities can not go without assuming powers in excess of those properly belonging to them, and in the case at bar we can but conclude that such powers have been transcended.

The ordinance is likewise invalid because it creates a monopoly. It is not competent for the city to grant an exclusive privilege to one individual to gather and remove those substances which are not *per se* nuisances. There can be, in the nature of things, no reasonable necessity for the city to gather and remove from the private premises of the inhabitants the accumulations of rubbish and

waste material which are not in themselves, and when not allowed to accumulate in unreasonable quantities, nuisances. How can it be said that a necessity exists, in order to protect the public health, to enter private grounds, and remove therefrom the refuse of the barn, ashes from the yard, and other material not offensive in itself if not permitted to accumulate in large quantities and for an unreasonable length of time? By what process of reasoning can it be said that the owner may be deprived of the right to keep his premises neat and clean, and remove all such material as rapidly as it may accumulate in such quantities as to warrant its disposition, and under such reasonable regulation as to the method of removal as may be imposed by the authority of the city? Why and for what reason must he engage only the city contractor to perform such services? If such may be lawfully required in the interest of proper sanitation laws, then may not the city grant an exclusive privilege to perform all work of drayage, hauling of material of whatsoever description, in order that a possible nuisance may be prevented? It can not, we think, be said, as was said in the Michigan case, *City of Grand Rapids v. De Vries*, 82 N. W. Rep. [Mich.], 269, that the removal and hauling of such substances is not a trade or occupation recognized by law. It may well be doubted whether the reason given in that case for holding the exclusive privilege granted not a monopoly is a valid one. We are all cognizant of the fact that scavenger work has a well accepted and defined meaning, and the occupation or business, lowly though it be, has existed and been recognized and regulated for ages. Certainly hauling refuse from barns, ashes, rubbish and other waste matter is a legitimate calling, and engaged in whenever opportunity affords by many as one of the means of acquiring a livelihood. Why license drays, scavenger wagons, teamsters and others engaged in hauling from place to place those things necessary to be carted from the owner's premises in cities and towns in order to prevent them from becom-

ing nuisances, if the trade and calling is not legitimate, and so regarded and recognized by law? The reason for the rule is fully stated and discussed in the case of *In Re Lowe,* 54 Kan., 757, and, although its application in that case is not supported by the weight of authority, yet in the case at bar the principle should be applied, because the right to transport and remove rubbish, ashes, manure and other waste material not of itself a menace to the public health, must be regarded as a lawful calling, and the attempted deprivation of the right to engage in it by all who may comply with all reasonable regulations pertaining to the subject is in restraint of trade, and therefore void. It follows that in the enactment of the section of the city ordinance now under consideration the city exceeded its powers, and for that reason the section should be, as was by the trial court, adjudged invalid and unenforceable.

The judgment of the district court is therefore accordingly

AFFIRMED.