GEORGE URBACH ET AL., APPELLANTS, V. CITY OF OMAHA, APPELLEE.

FILED MAY 19, 1917. No. 20015.

1. **Constitutional Law:** CITY ORDINANCE: REMOVAL OF GARBAGE. A city ordinance defining garbage to include "every refuse, accumulation of animal, fruit or vegetable matter that attends the preparation, use, cooking or the dealing in or storage of meats, fish, fowl, fruits or vegetables," and prohibiting its removal through the streets or alleys by any one not employed by the city for that purpose, is not unconstitutional as taking the property of a restaurant proprietor for public use without just compensation or as depriving him of his property without due process of law, though the regulation may prevent him from selling garbage as feed for swine.

2. ———: ———: RIGHT TO QUESTION. Parties whose constitutional rights are not affected will not ordinarily be permitted to challenge the constitutionality of a law on the ground that it may operate in other respects to deprive other persons of their constitutional rights.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*H. Fischer, William Sternberg* and *J. Gerald Mac Veigh,* for appellants.

*John A. Rine* and *W. C. Lambert, contra.*

ROSE, J.

This is an action to enjoin the city of Omaha from enforcing an ordinance prohibiting any one not employed by the city for that purpose from hauling garbage through the streets and alleys. Plaintiff King is the proprietor of a restaurant and sells the waste from his kitchen to plaintiff Urbach who hauls it beyond the city limits as feed for swine. It is alleged in the petition that the garbage is valuable feed for swine, and that the ordinance, in preventing King from selling it, violates the state and federal Constitutions, which prohibit the taking of private property without due process of law or for public use without just compensation. U. S. Const., Amend. XIV, sec. 1; Nebraska Const., art. I, sec. 21. Defendant demurred to the petition. The demurrer was sustained. From an order denying an injunction and dismissing the action, plaintiffs have appealed.

The ordinance makes it a misdemeanor for any one not employed by the city for that purpose to remove or haul any garbage through the streets or alleys; provides for the collection of garbage by city employees; requires every housekeeper, or occupant of any building, and the proprietor of any hotel, restaurant, café and boarding house to place all garbage in proper receptacles reasonably accessible to the garbage collector; and defines "garbage" to include "every refuse, accumulation of animal, fruit or vegetable matter

that attends the preparation, use, cooking or the dealing in or storage of meats, fish, fowl, fruits or vegetables."

The question presented is whether the enactment of the ordinance was a proper exercise of police power. Plaintiffs cite *Whelan v. Daniels,* 94 Neb. 642, in which it was held that an ordinance declaring that dead animals found within the city become the property of the contractor employed by the city to remove them was void as taking private property without just compensation. The decision was based on the propositions that a dead animal may be valuable property, that it is not a nuisance *per se,* and that its owner should be given a reasonable opportunity to remove it before it becomes a nuisance. In other cases it has been held that substances which are nuisances *per se* may "be removed by the city, in its exercise of lawful authority, for the protection and preservation of the health, comfort and welfare of the inhabitants." *Iler v. Ross,* 64 Neb. 710, 717; *Smiley v. MacDonald,* 42 Neb. 5. In the present case the ordinance deals with garbage, which it defines to include "every refuse, accumulation of animal, fruit or vegetable matter that attends the preparation, use, cooking or the dealing in or storage of meats, fish, fowl, fruits or vegetables." Under the police power of the city, garbage, thus defined, may be treated as a nuisance *per se. Smiley v. MacDonald,* 42 Neb. 5; *Iler v. Ross,* 64 Neb. 710; *City of Grand Rapids v. De Vries,* 123 Mich. 570; *State v. Robb,* 100 Me. 180; *O'Neal v. Harrison,* 96 Kan. 339; *California Reduction Co. v. Sanitary Reduction Works,* 199 U. S. 306; *Gardner v. Michigan,* 199 U. S. 325.

These cases are in harmony with the following statement of the law: "The removal and disposal of garbage, offal, and other refuse matter is recognized as a proper subject for the exercise of the power of a municipality to pass ordinances to promote the public health, comfort and safety. The natural scope of an ordinance on this subject is confined to discarded and rejected matter, i. e., to such as is no longer of value to the owner for ordinary purposes of domestic consumption. If the matter in question has not

been rejected or abandoned as worthless and is not offensive in any way to the public health, it does not come within the natural scope of such an ordinance. Garbage matter and refuse are regarded by the decisions as inherently of such a nature as to be either actual or potential nuisances. By reason of the inherent nature of the substance, it is therefore not a valid objection to an ordinance requiring disposal in a specified manner that garbage has some value for purposes of disposal, and that the effect of the ordinance is to deprive the owner or householder of such value. That the owner suffers some loss by destruction or removal without compensation is justified by the fact that the loss is occasioned through the exercise of the police power of the state, and the loss sustained by the individual is presumed to be compensated in the common benefit secured to the public." 2 Dillon, Municipal Corporations (5th ed.) sec. 678.

Plaintiffs further contend that the ordinance is void because it prohibits the owner of garbage from feeding it to fowls or animals on his own premises. Whether this is a proper construction of the ordinance and whether, thus construed, it is unconstitutional are questions not necessary to a decision. It is not shown that plaintiffs have been prevented from making such a use of the garbage. King complains because his right to sell garbage has been invaded, and the petition does not show that he does, or desires to, feed the garbage to fowls or animals on his own premises. Urbach complains because the ordinance denies him the right to purchase and remove garbage produced on the premises of others. The rule is that parties whose constitutional rights are not affected will not ordinarily be permitted to challenge the constitutionality of a law on the ground that it may operate in other respects to deprive other persons of their constitutional rights. *State v. Brandt,* 83 Neb. 656; *Cram v. Chicago, B. & Q. R. Co.,* 85 Neb. 586; *State v. Stevenson,* 18 Neb. 416; *Jeffrey Mfg. Co. v. Blagg,* 235 U. S. 571.

The ordinance is not unconstitutional for the reasons advanced by plaintiffs. The judgment of the district court is therefore

AFFIRMED.

HAMER, J., dissenting.

The plaintiff King is the proprietor and owner of a café situated in the city of Omaha, Nebraska, in which he serves meats, fish, fowl, fruits, vegetables and other food to his patrons. He claims the right to dispose of the unused left-over product as he sees fit. It is placed in a receptacle provided for that purpose. It is stipulated that the food not used is not decomposed, putrid, rotten or offensive when it is put in the receptacle, and also that it has a property value to the plaintiff King. It further appears that King sells the said material to the plaintiff Urbach who removes it from the King premises twice daily. The admitted value of the material sold by King raises an important state and federal question which I will hereafter attempt to discuss whether the property is taken by the city without due process of law.

The city of Omaha passed an ordinance by which it undertakes to take away from the restaurant keeper, the plaintiff King, and others similarly situated, including all the householders in the city, the right to dispose of their garbage to a customer purchasing the same and removing it from the premises. It is claimed on behalf of the defendant that under the ordinance the plaintiff King is prohibited from selling said garbage to the plaintiff Urbach, and that Urbach is prohibited from hauling the same through the streets of Omaha, even though the wagon used for that purpose is sufficient to remove said garbage in a sanitary way and without giving offense to the eye or nostril or in any way endangering the public. The ordinance provides that the city of Omaha shall remove the garbage, and that it shall haul the same in a good and substantial water-tight iron tank, or iron bed, securely inclosed with a sufficient covering so as to prevent the escape of the contents thereof,

Urbach v. City of Omaha.

or may haul the same in tight wooden boxes lined inside and out with iron or steel securely riveted and so as to be water tight. The ordinance provides that there shall be painted on the wagon used the words "City Garbarge Wagon," and that it shall be unlawful for any person to have or use upon the streets of Omaha any wagon so painted unless such person shall be an employee of the city engaged to remove or dispose of such garbage. There is also a provision that the housekeeper or occupant of any building in the city of Omaha and the proprietor of any hotel, restaurant, café, boarding house and eating house shall place their garbage in a suitable sheet iron or galvanized can with a tight cover provided at their own expense, and that such receptacles shall be placed near the alley in the rear of the premises. The ordinance defines garbage to mean "every refuse, accumulation of animal, fruit or vegetable matter that attends the preparation, use, cooking or the dealing in or storage of. meats, fish, fowl, fruits or vegetables." There is a fine provided for the violation of any of the provisions of the ordinance of not less than $10 nor more than $50.

The plaintiff Urbach is stipulated to be engaged in the business of feeding hogs near the city of Omaha, and also it is stipulated that he purchases said garbage from the owners thereof, and that he takes the same to his feed yards and feeds it to his hogs; that this business is his sole means of a livelihood; that the city of Omaha interferes with the business of said Urbach and the plaintiff King by arresting and incarcerating Urbach and threatens so to continue.

The petition of plaintiffs prayed to enjoin the enforcement of the ordinance. There was a demurrer filed by the city of Omaha to the petition of the plaintiffs, which petition sets forth the foregoing facts. The court sustained the demurrer of the defendant city and rendered judgment in its favor and against King and Urbach.

It is contended by the plaintiffs that the city of Omaha did not possess the power to pass the ordinance; that it is

unreasonable and interferes with property rights and with the liberties of the plaintiffs; that it works confiscation of the plaintiffs' property without due process of law; that by the classification made by the ordinance certain matters which are not nuisances are made matters of nuisance; that the ordinance attempts a prohibition, and not a regulation, and regardless of any necessity for prohibition or for regulation of the subject-matter over which it assumes to act; that the ordinance creates a monopoly by which the plaintiffs are deprived of their property without compensation. It is claimed by the defendant that the ordinance is within the scope of the police power and is in every way valid. No evidence was taken, and therefore the case stands upon the demurrer to the petition and the stipulation admitting the truth of the facts stated.

It is contended by the plaintiffs that private property shall not be taken without compensation; that to deprive the plaintiffs of their garbage as long as it has a property value and is not a nuisance is an unreasonable exercise of the police power and is in violation of the principles of constitutional law. It is said that the ordinance is confiscatory. Omaha is supposed to be a city of 200,000 people. It covers a large area, sufficient to contain 1,000,000 inhabitants. Many of its residents are poor people depending in part for their livelihood upon the use of gardens and vacant lots. Some have a team of horses to plow them, also the use of a cow in some localites, and some raise chickens. Omaha is a city of many small home builders. It is claimed that this ordinance reaches the little homes of many people who need to use the scraps from the kitchen table for the benefit of their chickens; that in places of the city of Omaha where the family cow may be found the potato peelings may not be given to her without endangering the safety of the family by arrest; also that prosperous restaurant keepers may not suffer as much as the occupant of the small home, because the proprietor may receive enough from his patrons to sustain him, but the laborer with his possible family cow and his possible chickens is in

Urbach v. City of Omaha.

danger of doing without eggs and butter; and that he and his family may suffer in consequence of the enforcement of the ordinance. It is emphasized that the ordinance is in thoughtless disregard of the rights of the people of the city belonging to all classes, and especially the poor. The ordinance extends to "every housekeeper or occupant of any building in the city of Omaha." There are probably 40,000 homes in Omaha. If each of these homes should lose $10 in a year because of this ordinance, the sum lost would amount to $400,000. One of the peculiar things about this ordinance is that it makes it unlawful for any person to put in the garbage can, or receptacle, ashes, tin cans, broken glassware or crockery, or any refuse other than "garbage." The "garbage" is apparently to be left in such condition that it can be eaten by animals. Of course, it could not be eaten if it contained broken glass or crockery or ashes and tin cans. I do not suggest that the purpose is to give this garbage to some political favorite of the city management, or some one person who has a valuable perquisite not known generally to the public, or to the city officers. It will be readily seen that there could be a job of that kind, but in this case there was no evidence taken, and therefore we may not know "what is what" behind the scenes. Why is the broken glass and broken crockery to be kept out of the garbage can? If the stuff was merely to be hauled away and dumped in a safe place they could do no harm. Of course, we may not be able to shut our eyes to the possibilities of this plan. If the garbage is removed at the expense of the city, then there might be a little dot in this arrangement amounting to many thousands of dollars, and more than the salaries of all the state officers, including also the congressmen. Why should the laborer or the clerk with his little home and his possible cow and chickens be deprived of the waste which he can make very useful to himself and his family? Eggs and milk and butter will tend to make the children well and strong. It will put the rosy bloom of vigorous health in their

101 Neb.—21

cheeks. The disposition of this case is something to the advantage or disadvantage of every householder in Omaha, including also all the hotel and restaurant keepers, and many of the dealers in fruits and vegetables.

In the brief of counsel for the appellants it is stated that there are in Omaha numerous wholesale food merchants handling great quantities of perishable foods, and that in the spring and summer immense shipments of fruit, melons, eggs and vegetables are handled, picked over, sorted and reshipped throughout the great Missouri valley, and that in handling this stuff a large amount of articles unsuitable for shipment are culled from original shipments with the result that many tons of culled fruit, melons, eggs and vegetables are left; that immediately the city of Omaha steps in and takes the salvage from the hands of the owner and bestows it upon the contractor who has agreed to pay the city the sum of $1,000 a year for the privilege of being able to demand and receive food which in one good day is said to be worth more than the sum he pays for the entire year, and that the commission merchant has no recourse but to deliver over; that no demand is necessary; that he is guilty of a misdemeanor if he fails to provide receptacles and put the culls in the cases; that he is not allowed to feed the culls to hogs of his own, nor to sell them to another, and that the purpose is to provide the contractor with a great amount of valuable material without expense to him; that one is not permitted to burn the garbage in an incinerator; that it must be turned over to the contractor.

It is also said in the brief that the ordinance does not say, "Place in a receptacle convenient for removal or otherwise dispose of the same in the manner provided by the board of health (or other proper officer)," but proclaims that the contractor has an indefeasible right to "every refuse, accumulation of animal, fruit or vegetable matter that attends the preparation, use, cooking or the dealing in or storage of meats, fish, fowl, fruits or vegetables." The ordinance is somewhat artfully drawn because the purpose perhaps is hidden under what appears to be an innocent

definition, but it includes the language quoted, and takes the articles mentioned from the owner.   In the city there are many butcher shops in which fats, oils, tallow, scraps of meat and bones accumulate.   These things may be collected and reduced to useful products, though not fit for food. They can be made into lubricants and soap, and perhaps other things.   According to this ordinance, no hotel owner, no restaurant proprietor, may take these scraps through the streets of Omaha to his hogs or his chickens. This sort of thing is confiscation because in the stipulation it is said that the scraps and remnants "are not decomposed, putrid, rotten or offensive when put in said receptacle."   It is proposed to take from the owners of the property things of substantial worth, and, under the claim that it is necessary, the ordinance hits everybody.

We seem to have disposed of the questions involved in this case in the following cases: *Smiley v. MacDonald*, 42 Neb. 5; *Iler v. Ross*, 64 Neb. 710; *Whelan v. Daniels*, 94 Neb. 642.   They are all garbage cases.

In *Smiley v. MacDonald*, this court laid down a general rule which ought not to be lost sight of: "It may, however, with safety be asserted that the legislature cannot under the guise of police regulations arbitrarily invade personal rights and private property."   If we apply the rule here laid down to the instant case, it probably requires a disposition of it in favor of the plaintiffs.   At the same time it is proper to remark that the removal of noxious and unwholesome matter tends directly to promote the public health and the comfort and welfare of the people.   The health of the people is above every other consideration, and all steps necessary to secure its maintenance should be taken.   But this brings us to the question of whether the ordinance of the city goes further than is necessary.   It raises the question whether the man who buys the garbage may not be regulated in his manner of removing it with the same strictness and efficiency required of the city contractor.   Why should he not keep just as good and safe a

wagon as the city contractor and operate it just as well and with as much care?

In *Iler v. Ross, supra,* section 1 of the ordinance there under consideration provided that any person who shall collect or remove any dead animals, garbage, ashes, filth, offal, night soil or other refuse matter within the corporate limits of the city of Omaha, not having a contract with said city so to do, shall be deemed guilty of misdemeanor, and upon conviction thereof shall be fined not less than $5 nor more than $20. The relators in that case had been convicted of unlawfully collecting and removing garbage, ashes, filth and other refuse matter, without having a contract with the city, and contrary to the provisions of said section 1. They sought relief by *habeas corpus.* This court said, among other things: "If the city is empowered to enact an ordinance providing that a contract shall first be entered into with it before any person is authorized to do any of the things prohibited, it follows as a legal sequence that the city may grant an exclusive right to one individual with whom it may enter into a contract and refuse to contract with all others; that is, if it is authorized to contract at all, it may lawfully contract with one or more, as may best suit its own views as to the propriety, necessity and terms upon which it will enter into such contractual relation with another." In that case the word "garbage" was defined by the ordinance to mean "all refuse matter, animal or vegetable." It is there said that the right of a city under charter acts such as the one quoted to make all needful rules and regulations for the proper collection and removal of all forms of rubbish, waste and other refuse matter where the population is in a small territory and in order to protect the health of the inhabitants seems a proposition so plain as not to require discussion. Such regulation was clearly contemplated by the legislature. It is said: "In fact the preservation of the health and safety of the inhabitants is one of the chief purposes of local government, and reasonable by-laws in relation thereto have always been sustained

in England, as within the incidental authority of such corporations"—citing *Boehm & Loeber v. Mayor and City Council of Baltimore,* 61 Md. 259. The court also quotes *River Rendering Co. v. Behr,* 7 Mo. App. 345, where it was said: "The municipal legislature is especially charged with the preservation of the public health. That high duty lies in prevention rather than in cure. It would be poorly discharged, or not discharged at all, if the surest and most well-known precautionary measures were not thoroughly put in practice against the introduction of disease."

The court also cited *Alpers v. City and County of San Francisco,* 32 Fed. 503. After these citations and quotations, this court said: "Can an ordinance be upheld and justified as broad and of so sweeping a character as the one under consideration, which includes all accumulations of ashes, stable manure, rubbish, debris, etc., many different kinds of which may properly be regarded of some utility to the owner or others and which are not *per se* noxious and harmful? Is a city empowered to contract with one individual, and authorize him exclusively to go upon the private premises of the inhabitants, collect and remove at the owner's expense all such substances, and to make it a penal offense for another to engage in the performance of the same kind of labor? Can the city, merely by its fiat, declare all and every substance of the kind mentioned nuisances, and direct their abatement and removal through the agency of an exclusive contractor?" The court then quotes what is said in *Smiley v. MacDonald, supra,* concerning the limitation of the power of the legislature preventing it from arbitrarily invading private property or personal rights; also calls attention to the fact that stable manure has a value for the purpose of fertilizing lawns and gardens, and is highly prized by the thrifty husbandman in agricultural communities because it enriches the soil and increases the yield of crops, and that cinders and ashes are regarded as useful for many purposes. It is then said: "The ordinance not only grants a monopoly, always odious in the eye of the law, without

justification or necessity therefor as a sanitary measure for the protection and preservation of the public health, comfort and welfare, but is also (always) an unwarranted invasion of the natural rights of the inhabitants of the city. It is, true the banker, the merchant and the lawyer may remove from their own premises, and with their own teams, stable manure, but nothing else. The man without a team and the one who desires to earn an honest living, in removing for others these things which are not in themselves injurious to health are completely debarred. * * .* Not only is the owner's property taken from him when he could perhaps dispose of it or make arrangements for its disposal to some advantage, but he is compelled to bear the expense of the taking. We cannot believe such an ordinance can be justified and upheld by the application of any sound principle of law."

In *Whelan v. Daniels,* 94 Neb 642, it was held: "The owner should be permitted to remove such animals or to cause the same to be removed within a reasonable time fixed by such municipality, and be allowed to receive the value thereof, or to put the same to a beneficial use." In the body of the opinion it is said: "The officers of the city must be allowed a large discretion in determining when and how such garbage must be disposed of, but the rights of property in the individual must not be unnecessarily violated." This court held, as stated in the syllabus: "The city of Omaha by an ordinance, in effect, declared that the carcasses of all dead animals found within the city, which were not slain for food, should at once become the property of the public contractor, whose name was contained in the ordinance; such ordinance is void, so far as it attempts to take private property without due process of law."

The ordinance under consideration is quite as sweeping as the ordinance in *Whelan v. Daniels.* In the instant case the language is not the same, but the effect is quite as drastic. In that case the law as declared by this court permitted the owner to remove the dead animal or to cause

the same to be removed within a reasonable time to be fixed by the municipality, and to be allowed to receive the value thereof, or to put the same to a beneficial use. The left-over part of a meal is perhaps quite as cleanly as the part that has just been eaten. If in the case of *Whelan v. Daniels* the owner of the dead animal was declared to have a reasonable time in which to remove it, or to apply it to a beneficial use, then the application of the same rule to the instant case does not in any way hinder the owner from removing what is of value to him, nor prevent him from selling it and realizing its value. The fallacy in the contention made on behalf of the defendant city is that only the contractor can safely be trusted with the removal of the matter to be taken away. I do not see why the man who purchases the refuse and undertakes to remove it may not be treated just as strictly as the city contractor. The power to pass by-laws gives authority to pass the same when they are reasonable in their character, within the scope of municipal authority, and not repugnant to the Constitution and general laws of the state. *State v. Ferguson*, 33 N. H. 424. It is no part of the franchise of municipal corporations to change the meaning of English words. *Mays v. City of Cincinnati*, 1 Ohio St. 268; *Henback v. State*, 53 Ala. 523. This being the case, left-over food of value cannot be discredited by calling it "garbage."

In England every by-law must be reasonable, and not inconsistent with the character of the corporation, nor with any statute of parliament, nor with the general principles of the common law of the land, particularly those having relation to the liberty of the subject or the rights of private property. *Feltmakers Co. v. Davis*, 1 Bos. & P. (Eng.) 98; *Sutton's Hospital*, 5 Coke (Eng.) pt. 10, p. 1; *City of London v. Vanacker*, 1 Ld. Raym. (Eng.) 497.

In the United States an ordinance passed in virtue of implied power must be reasonable, consonant with the general powers and purposes of the corporation, and not inconsistent with the laws of the state. *Davis v. Town of*

*Anita,* 73 Ia. 325; *Yick Wo v. Hopkins,* 118 U. S. 356; *Trustees of Schools v. People,* 87 Ill. 303; *In re Frazee,* 63 Mich. 396; *Clason v. City of Milwaukee,* 30 Wis. 316; *Ex parte Frank,* 52 Cal. 606; *State v. Higgs,* 126 N. Car. 1014; *Mayor of Memphis v. Winfield,* 27 Tenn. 707. The ordinance in the last case directed watchmen to arrest any free negro or slave that they might "find out after 10 o'clock (at night) and lodge them in the calaboose, there to remain until next morning." In addition, if the negro arrested was a slave, he or she was to receive ten lashes "on their naked backs." It is apparent that sometimes the ordinances of the past have been oppressive, while professing to be for the good of the community and the enforcement of proper conduct.