[Crim. No. 1240. In Bank.—July 13, 1905.]

## In Re ANTONE G. ZHIZHUZZA, on Habeas Corpus.

MUNICIPAL ORDINANCE—REMOVAL OF GARBAGE BY CITY—POLICE POWER —VALIDITY—DIFFERENCE IN RATES.—A municipal ordinance resting upon the police power conferred by section 11 of article XI of the constitution, as well as that conferred by the freeholders' charter of the city, providing for the exclusive removal of all garbage by the city, its agents and employees, to be consumed in a city crematory, and making it a penal offense to violate it, must be presumed valid, and cannot be deemed void as unreasonable, unfair, and partial because it fixes different rates for dwellings from those exacted from business places and boarding-houses.

ID.—UNIFOMITY OF OPERATION.—Section 11 of article I of the constitution in regard to the uniformity of the operation of laws does not apply to municipal ordinances, and does not invalidate laws based upon proper classification.

ID.—POWER OF MUNICIPAL CONTROL.—The removal and disposition of garbage is peculiarly a subject of municipal control; and where the freeholders' charter of the city gives it full power to regulate business of every kind that may endanger the public safety, health, and comfort, an ordinance in pursuance thereof has the same force and effect within the city limits as laws passed by the legislature.

ID.—PRIVATE RIGHTS—PUBLIC GOOD.—In cases where laws or ordinances are enacted in pursuance of the police power, private rights must yield to the public good.

PETITION for Writ of Habeas Corpus to the Chief of Police of the City of Oakland.

The facts are stated in the opinion of the court.

Harding & Sargent, and James H. Creely, for Petitioner.

Goodfellow & Eells, and Snook & Church, for Respondent.

VAN DYKE, J.—The petitioner is a scavenger in the city of Oakland, and was convicted of gathering and removing garbage in violation of an ordinance of that city, and his conviction in the police court of the city of Oakland was affirmed in the superior court of Alameda County. The petitioner claims that the ordinance under which he was arrested and convicted is void and unconstitutional. The ordinance in question is entitled "Ordinance No. 2257," and the provisions thereof involved in the consideration of the case are sections 1, 2, 7, 8, and 21, the latter section as amended by ordinance designated No. 2269, the amendment consisting in adding the portion following the word "provided" in section 21. The sections of said ordinance referred to are as follows, to wit:—

"Section I. The city of Oakland, its duly authorized agents, servants or employees, shall have the exclusive right to gather and collect garbage within said city and it shall be unlawful for any person, firm or corporation, except as otherwise provided in this ordinance, to collect or gather garbage within said city.

"Section II. For the purpose of this ordinance the word 'garbage' shall be held to include and mean kitchen and table refuse and offal, swill and also every accumulation of animal, vegetable and other matter that attends the preparation, consumption, decay or dealing in or storage of meats, fish, fowls, birds, fruits or vegetables (saving and excepting that dead animals and offal of slaughter-houses are not included within the meaning of said word 'garbage' as herein defined).

"The term 'waste matter' shall include and be held to mean broken crockery, broken bottles, broken bricks, tin vessels, trimmings from lawns and flower gardens, pasteboard boxes, berry boxes, paper, straw, sawdust, packing materials, shavings, boxes, natural soil, street sweepings, earth and stone and all non-combustible waste matter.

"The term 'street sweepings,' 'earth' and 'stone,' as used herein, does not mean or include street sweepings, earth and stone under public control, and removed by other agencies of the municipality, either by public contract or by the street department.

"The term 'ashes' shall be held to include and mean the residue of materials burned.

"The term 'night soil' shall include and mean the contents of privy vaults, cesspools, dry wells and sinks."

"Section VII. All garbage accumulated at any private dwelling-house or residence shall be removed by the city of Oakland, its agents, servants, or employees at regular intervals of once a week (or oftener at the request of any tenant, occupant, or lessee), and must be taken to the city garbage crematory or such other crematory as may be hereafter legally established in said city, and must forthwith be consumed and incinerated therein to an odorless ash, and the city of Oakland, its agents, servants or employees, shall remove all ashes and waste matter. For such services the occupant, tenant or lessee of each house or flat shall pay to the authorized agent, or collector, of the city garbage crematory, the sum of $0.35 per month for each ten-gallon garbage can, removed once a week or less per month; and for such can removed additional to the removal of once a week for seven and one half cents per can. All ashes and waste matter must, when requested by the tenant, lessee or occupant of any residence, house or flat, paying for the removal of garbage (but not oftener than once in two weeks), be removed by the city's agents free of charge, providing such ashes and waste matter do not exceed twenty gallons per week from the same premises.

"Section VIII. All accumulations of garbage at any store, shop, business house, boarding-house, meat, vegetable, or fish stand or other place not a private residence, shall be removed and burned in the garbage furnace of the city garbage crematory or other garbage crematory legally established, to an

odorless ash, and such crematory shall also remove all ashes
from such premises. All such garbage accumulations shall
be kept upon such premises in receptacles furnished by the
city garbage crematory or other legally established crematory,
as provided in sections 5 and 6 of this ordinance; for such
service each keeper of such business house, meat, vegetable
or fish stand or place other than a private residence and all
apartment houses containing more than ten families, provided
all the garbage in such apartment house is placed in one re-
ceptacle, shall pay to the authorized agent or collector of the
city or other garbage crematory the sum of eighty-five cents
per cubic yard for removing such garbage and ashes; and
such crematory shall also remove all waste matter from such
premises at the sum of $1.25 per cubic yard. The removal of
all ashes and waste matter by such garbage crematory shall
be optional with the person, firm or corporation producing the
same.''

"Section XXI. Any person violating any provision of this
ordinance shall be guilty of a misdemeanor, and upon con-
viction thereof shall be subject to a fine of not less than five
(5) dollars nor more than fifty (50) dollars, or in default
of payment of the same shall be imprisoned in the city prison
one day for every two (2) dollars of said fine remaining un-
paid. Provided that such penalty of fine or imprisonment
shall not be imposed upon any person for failure to pay to
the agent or collector of the city garbage crematory the
charges fixed by this ordinance for the removal of garbage,
but lessee of said crematory shall be entitled to recover the
amount of such charges with interest and costs, by civil ac-
tion from any person, firm or corporation incurring or liable
for the same under the provisions of this ordinance. And
provided further that if the charges hereby fixed for the
removal or incineration of any garbage, night soil, waste
matter or other material from any house or premises shall
not be paid to the lessee of said crematory within ten (10)
days after demand of such payment, said lessee shall there-
after be under no obligation to collect or remove any garbage
from such house or premises or to furnish receptacles there-
for, until all such charges shall have been paid to it in full.''

The ordinance also declares:—

"Section XIV. All garbage furnaces and works shall be

kept in a sanitary condition and shall at all times be under
the inspection of the board of health.''

"Section XVI. All garbage shall be removed or carried
through said city on carts or wagons in water-tight covered
carts, or in covered wagons, so that the contents thereof shall
not be offensive, and said carts and wagons shall be so loaded
and drawn that none of their contents shall fall or spill
therefrom; and every such cart or wagon shall be kept clean,
well painted on the outside, and shall be marked with the
words 'City Garbage,' and the carts and wagons shall be
numbered in numerical order with the number of each painted
on the outside thereof, so as to be plainly seen. Each driver
of such cart or wagon, and all assistants employed in con-
nection therewith, shall wear a distinctive coat and badge
with the words 'Garbage Collector' thereon.''

On the part of the petitioner it is contended:—

1. That the ordinance in question is void, because it is
unreasonable, unfair, partial, and discriminating; and it is
said that the persons affected by it are the purchasers of
garbage, waste matter, and ashes in the city of Oakland, and
that the ordinance is not uniform in its operation, because
it makes an arbitrary and senseless discrimination between
the charge for the removal of garbage accumulated at a
private dwelling-house and that accumulated at any store,
shop, business house, or boarding-house, or any place not a
private residence. It might be remarked in passing, however,
that the persons referred to as being injuriously affected by
the ordinance are not complaining here,—to wit, owners of
private dwelling-houses,—but a person who gathers up and
removes garbage in a mode and manner not authorized by
the ordinance in question. It may be, also, that the cost of
collecting and removing garbage, where the quantity is less,
as at private houses, may justify a difference in the cost of
removal; besides, it is provided that the ashes and waste
matter of the householders shall be removed without charge;
and this might have been considered sufficient to equalize the
expense of removal. A municipal ordinance must be very
clearly obnoxious to such objection before it will be declared
invalid. ''Every intendment is to be indulged in favor of its
validity, and all doubts resolved in a way to uphold the law-
making power; and a contrary conclusion will never be

reached upon light consideration. It is the province and right of the municipality to regulate its local affairs—within the law, of course—and it is the duty of the courts to uphold such regulations, except it manifestly appear that the ordinance or by-law transcends the power of the municipality, and contravenes rights secured to the citizen by the constitution, or laws made in pursuance thereof." (*Ex parte Haskell,* 112 Cal. 416, [44 Pac. 725]; *Ex parte McKenna,* 126 Cal. 432, [58 Pac. 916]; *Ex parte Lemon,* 143 Cal. 563, [77 Pac. 455].) In this latter case this court upheld an ordinance of the city of Marysville which imposed a lower license upon hotels and boarding-houses where the meals were wholly cooked and served by the proprietor and members of his family than upon all other hotels and boarding-houses. It is said in that case: "We must, however, judge of the reasonableness of the ordinance in question by what we know of the general conditions, and not hold it void simply because in some exceptional case it may result in imposing unequal burdens. . . . The classification here adopted is probably no more likely to practically result in unfair discrimination between those similarly situated as to amount of business than a classification according to a number of rooms in a hotel or the number of employees in a laundry, and the ordinary effect of the enforcement of the provision as it stands will be that those doing the greater amount of business will pay the higher tax fixed thereby."

Petitioner's counsel seem to rely upon *Ex parte Frank,* 52 Cal. 606, [28 Am. Rep. 642]. But that involved an ordinance of the city and county of San Francisco which exacted a license for selling goods, fixing one rate of license for selling goods within the corporate limits, or in transit to the city, and another much larger license for selling goods which were not in the city or in transit to it; and it was properly held in that case that such ordinance was unjust, unequal, partial, oppressive, and in restraint of trade. That, however, has no relation to the exercise of police power to prevent or to abate a nuisance, as in the case of garbage, slaughter-houses, etc.

2. It is also contended on behalf of petitioner that the fees for the removal of garbage must be based on quantity, and not determined by the place from which the garbage is re-

moved. The authority for the ordinance is found in section 11 of article XI of the state constitution, granting a power to municipal corporations, such as cities and towns, to make and enforce within their limits all such local, police, sanitary, and other regulations as are not in conflict with general laws. Putting hotels, shops, and boarding-houses into one class, and private dwellings into another, it would seem is based upon the relative quantity of garbage produced by them, and it cannot be said to be an unfair or unreasonable way of determining such matter. Besides, the ordinance provides that such garbage shall be removed only by the city or its authorized agents in the manner designated in the ordinance.

3. It is further contended on behalf of petitioner that the ordinance is void because it makes the removal of garbage from dwellings a penal offense, and not from other places, but it will be seen that the first section of the ordinance declares that the city of Oakland, its authorized agents, servants, or employees, shall have the exclusive right to gather and collect garbage within said city, and it shall be unlawful for any person, firm, or corporation, except as otherwise provided in this ordinance, to collect or gather garbage within said city. As the section stands, it forbids all persons not expressly authorized to collect or remove garbage.

4. It is further claimed that the ordinance in question violates section 11 of article I of the constitution, which provides that "All laws of a general nature shall have a uniform operation." This provision of the constitution has no application to ordinances of a city of the character in question. In *Hellman* v. *Shoulters,* 114 Cal. 146, [44 Pac. 915, 45 Pac. 1057], it is said: "There is no constitutional provision which expressly requires the uniform operation of municipal ordinances. Nevertheless, where they unjustly discriminate they are sometimes declared unreasonable and therefore void." A law is general which applies to all of a class—the classification being a proper one, and the requirement of the constitutional provision in question is satisfied if it applies to all the class alike. "The word 'uniform' in the constitution does not mean universal. The section intends simply that the effect of general laws shall be the same to and upon all persons who stand in the same relation to the law—that is, all the facts of whose cases are substantially the same." (*People*

v. *Judge Twelfth District,* 17 Cal. 547.   See, also, *Ex parte Mirande,* 73 Cal. 375, [14 Pac. 888]; *Ex parte Moynier,* 65 Cal. 35, [2 Pac. 728]; *Ex parte Jackson,* 143 Cal. 573, [77 Pac. 457].)

. 5. It is next objected on the part of petitioner that the city has no power to exact a fee from householders for the removal of garbage. . The petitioner, however, is not convicted of a refusal to pay for removing garbage; further, by the ordinance itself, refusal to pay for the removal of garbage is not punishable by fine or imprisonment, the only remedy being an ordinary civil action.   This point, however, has been settled against the contention of the petitioner.   (*Slaughter-House Cases,* 16 Wall. 36; *Walker* v. *Jameson,* 140 Ind. 591, [49 Am. St. Rep. 222, 37 N. E. 402, 39 N. E. 869].)   ''Laws or ordinances enacted under the police power for the protection of the public health, reasonably adapted to that end, are not unconstitutional because they may incidentally operate to deprive individuals of their property or its use without compensation, or interfere with their personal liberty, nor because they may give one person a monopoly of a certain business or occupation, private rights being required to yield in such case to the public good.''   (*California Reduction Co.* v. *Sanitary Reduction Works,* 126 Fed. 29.)

6. It is further claimed, on behalf of the petitioner, that the ordinance in question is an admitted police regulation, and is unconstitutional because its scope exceeds the police power of the city of Oakland; that the city does not possess the power of invading private premises and removing garbage therefrom—garbage not being a nuisance *per se.*

The removal and disposition of garbage, as well as the regulation of slaughter-houses in cities and towns, is peculiarly a subject of municipal control, as without proper regulation either might become an intolerable nuisance and dangerous to the health and lives of the citizens.

The city of Oakland is organized under a freeholders' charter, as prescribed by the constitution of the state; by such charter the city council is given power by ordinance, ''to declare what shall constitute a nuisance and abate the same,'' and to regulate ''business of every description that may endanger the public safety, health and comfort.''   Ordinances and regulations enacted by such city in pursuance of. its

charter have the same force and effect within the limits of the city as laws passed by the legislature. They both spring from the same source—the state constitution enacted by the people in their sovereign capacity.

Writ discharged and prisoner remanded.

Shaw, J., Angellotti, J., McFarland, J., Lorigan, J., and Henshaw, J., concurred.

BEATTY, C. J., concurring.—I concur in the judgment. The only objection to the validity of the ordinance which the petitioner is in a position to urge relates to the power of the municipality to reserve to itself the exclusive right, through its own selected agents, to collect and remove those refuse matters which are, or by delay in removal may become, a public nuisance. That the city has this right I think is clear, and so far as the ordinance secures it no doubt it is valid. The petitioner has therefore violated its valid provisions, and subjected himself to the penalty imposed. As to the alleged discrimination in rates, and other questions discussed in the briefs, I prefer to express no opinion until they are raised by some person injuriously affected by the provisions of the ordinance out of which they arise.