[Crim. No. 1016.   Third Appellate District.—January 28, 1928.]

In the Matter of the Application of G. SANTOS for a Writ of Habeas Corpus.

Robert H. Schwab and Will J. Carraghar for Petitioner.

R. L. Shinn, City Attorney, for Respondent.

PLUMMER, J.—The petitioner was tried and convicted of unlawfully transporting garbage through the streets of the city of Sacramento in violation of Ordinance No. 146, fourth series, of said city, and filed his application herein for a writ of *habeas corpus,* and as a reason for his discharge alleges that section one of said ordinance is unconstitutional in that it deprives a private person of his property without due process of law.

The ordinance in question provides for the disposal of garbage and its transportation through the streets of the city of Sacramento only by duly authorized persons. The different provisions of the ordinance specify the containers in which garbage shall be kept and also the manner of its transportation through the streets of the city of Sacramento to insure against the escape of noxious odors or fumes.

We need consider only section 1 of the act in question, as all the other provisions are merely regulatory. That section reads:

"Section 1. Garbage, as the said word is made use of in this ordinance, consists of dead animals, of not more than ten pounds weight each, and of every accumulation of animal, vegetable and other matter that attend the preparation, consumption, decay or dealing in, or storage of, meats, fish, fowls, birds, fruits or vegetables. The term 'garbage' does not include dish water or waste water."

While not in the exact language of the ordinance under consideration in the case of *In re Zhizhuzza,* 147 Cal. 328 [81 Pac. 955], the section just quoted is in substance the same as the definition of "garbage" there set forth. For the purposes of definition, "garbage," in the Oakland ordinance involved in said action, reads as follows:

"Garbage shall be held to include and mean kitchen and table refuse and offal, swill, and also every accumulation of animals, vegetable and other matter that attends the preparation, consumption, decay or dealing in, or storage of, meats, fish, fowls, birds, fruits or vegetables."

It does appear, however, that in the upholding of the Oakland ordinance the supreme court did not in its opinion expressly pass upon the question as to whether the ordinance did or did not deprive a person of private property without compensation, and therefore unconstitutional. That question does not appear to have been urged upon the attention of the court. However, notwithstanding there has been some divergence of opinion upon the question presented for our consideration, we will cite leading cases where ordinances almost word for word with that adopted by the city of Sacramento have been upheld and the constitutional question directly passed upon.

In the case of *Pantlind* v. *City of Grand Rapids*, 210 Mich. 18 [15 A. L. R. 280, 177 N. W. 302], we find this definition in the ordinance under consideration: "Section 3. The words 'garbage' and 'offal,' as used in this ordinance, shall be held to include every refuse accumulation of animal, fruit or vegetable matter, liquid or otherwise that attends the preparation, use, cooking, dealing in, or storing of, meat, fish, fowl, fruit or vegetables."

In the case of *Wheeler* v. *Boston*, 233 Mass. 275 [15 A. L. R. 275, 123 N. E. 684], similar language is used, though the form employed in defining the word "garbage," the prohibitive form as to transportation was used, to wit: "Ordered that no person, firm or corporation, other than the City of Boston, or the city contractors or their agents, shall carry, convey or transport through the alleys, streets or public places of the City of Boston any kitchen swill or garbage consisting of any refuse accumulation of meat, fish, fowl, fruit or vegetable matter."

These citations are sufficient to show that the term "garbage," as used in section 1 of the Sacramento Ordinance No. 146, fourth series, is to all intents and purposes the same as usually employed in ordinances dealing with the subject of garbage.

In *Valley Springs Hog Ranch Co.* v. *Plagmann*, 282 Mo. 1 [15 A. L. R. 266, 220 S. W. 1], the objections which are

urged to the ordinance under consideration were all fully considered. The ordinance of the city of Joplin involved in the Plagmann case set forth fully and specifically the containers in which garbage should be placed, the vehicles to be used in its transportation, the manner of handling the garbage so that no noxious odors might escape or find their way into the air during such transportation, were fully set forth. Air-tight metallic receptacles were provided for, and also that the garbage should be removed by persons contracting with the city or acting under the authorization of the city. The trial court, relying upon a case decided thirty-six years previously to the one then being considered, held that the ordinance was void as taking private property without compensation. Upon appeal the judgment of the trial court was reversed, and in reversing the judgment the trial court held, as we must hold here, that the application of the police power of a city must be held coextensive with the increased necessities requisite for the preservation of the health of municipalities, and quoted with approval the following language from the case of *Grand Rapids* v. *DeVries*, 123 Mich. 582 [82 N. W. 273]: "The gathering of garbage is not a trade, business or occupation in any proper sense, and such employment does not come under the doctrine with reference to monopolies or with reference to legislation in restraint of trade. It is a matter in which the public agencies are authorized to pursue the best means to protect the public health. The Charter provisions recognize the fact that certain matter may be deleterious to public health and dangerous to persons or property and thus become a public nuisance, and the Charter makes it the duty of the Common Council to declare any place, thing or matter which may be deleterious to public health or dangerous to persons or property, a public nuisance and the Council is given power to abate such nuisance. The ordinance treats garbage or offal as deleterious to public health, and directs the manner of its disposition for the benefit of the public health. It is one of the police regulations of the city for the benefit of the public health."

In the case of *California Reduction Works Co.* v. *Sanitary Reduction Works*, 199 U. S. 317 [50 L. Ed. 204, 26 Sup. Ct. Rep. 100], the supreme court, speaking of the right to grant an exclusive privilege to collect garbage, said:

"The exclusive right granted to Sharon, his associates and assigns, was certainly a privilege and the Board of Supervisors had power to grant it in order to protect the public health. But independently of the above Statutes, the Board had power, under the Constitution of the State, to make such sanitary regulations as were not inconsistent with general laws, and that broad power carried with it the power by contract and ordinance, to guard the public health in all reasonable ways."

In *State* v. *Orr*, 68 Conn. 110 [34 A. L. R. 279, 35 Atl. 771], the subject of granting an exclusive privilege to collect and transport garbage is thus treated: "Under these provisions, and the authority of the special act of 1895, the Board of Health might contract with a single person to collect and remove garbage from the entire city, or with several persons to collect and remove it from as many different portions of the city. It might also make such contracts with respect to part of the city, or to certain buildings in part of the city, and leave the collection and removal of garbage from other places open to those who obtained from its clerk a proper permit, and provided proper means of transportation. By neither method of procedure would any monopoly be created by which the common rights of citizenship would be infringed upon."

In the case of *Valley Springs Hog Ranch Co.* v. *Plagmann, supra,* the opinion of the supreme court in reversing the judgment of the trial court on the question of taking private property without compensation, held as follows: "It is next urged that the ordinance is destructive of property rights. It is true that there may be an ownership of garbage from the kitchen, but the value of the owner's rights therein is so inconsequential that they are absorbed and lost in the greater rights of the state to protect such owner and the public at large from the dire effects of improper methods in the handling and disposition of the same. Garbage, if allowed to accumulate and decompose, becomes a public nuisance. . . . But a short time is required to convert the harmless table scrap into a pestilence-breeding nuisance, when it is intermingled with other refuse from the kitchen." And then cites a number of authorities to the following point: "The Constitutional guaranties that no person shall be deprived of life, liberty or property without

due process of law, and that no state shall deny to any person within its jurisdiction the equal protection of the laws, were not intended to limit the subjects upon which the police power of a state may lawfully be exerted."

In *Barbier* v. *Connolly*, 113 U. S. 27 [28 L. Ed. 923, 5 Sup. Ct. Rep. 357, see, also, Rose's U. S. Notes], the supreme court of the United States, after referring to what is generally known as the "slaughter-house" cases, in speaking of the police power to regulate the use of private property, held as follows: "They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner. If he suffers injury it is either *damnum absque injuria* or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure." All the authorities agree that the preservation of health of the inhabitants is one of the most important purposes of municipal governments. ■ And the police power in this respect is coextensive with the necessities of the situation. That the collection and removal of garbage is one of these necessities requires no argument. Its disposal within a very limited period of time is of prime importance. Whether it is disposed of by cremation or by other methods is wholly immaterial. Its collection, transportation, and removal from the limits of the municipality are the fundamental purposes for the exercise of the police power regulating and requiring the same in order to protect the public health.

■ That the garbage in question may have some value as food for hogs does not in anywise limit the police power of municipalities. The following statement, which we take from the notes in 14 A. L. R., page 301, is supported by numerous authorities there cited, to wit: "In spite of the fact that garbage, after it has been discarded as food for human consumption, has a certain value as food for hogs or for rendering purposes, its value for such purposes is so slight as compared with the danger to the public health, if the owner is allowed to dispose of it without restriction, that the courts have unanimously held that a requirement of the destruction of garbage cannot be regarded as a taking of private property for public use without compensation." Among the authorities cited are the cases decided by the

United States supreme court to which we have heretofore referred. In one of the cases cited in the notes to which we have referred we find the following which is applicable: "The mere fact that the defendant was willing to buy garbage and use it for those purposes (feeding to hogs), is not sufficient to remove it from the category of nuisances and settle its character as property. Whilst money value is evidence, and sometimes very strong evidence to that end, it is not of itself sufficient to make a case of unreasonableness or oppression against the law and the regulations under consideration. Some members of the community may be willing to expose their own health to danger through the use of noisome manures, and to eat the flesh of animals fed upon garbage, to sell such flesh for food to others who may be unaware of its character, but their practices cannot make a rule of community observances. It is against the ignorance, the indifference, the selfishness, the avarice, the wilful disregard of just and intelligent public opinion, that the police power must be constantly invoked on behalf of the common safety and advantage." It is this very fact that makes the regulation of the keeping of containers or receptacles in which garbage shall be placed, and the manner of its collection and disposal, a subject of necessary police regulation. In every city there is more or less ignorance, more or less wilful disregard of all health laws and much avarice which renders police regulations, such as we are here considering, absolutely indispensable, against which the so-called property right must yield to the general good. That such ordinances are not unconstitutional as violating any property rights is distinctly held by the United States supreme court in the case of *California Reduction Co.* v. *Sanitary Reduction Co.*, 199 U. S. 306 [50 L. Ed. 204, 26 Sup. Ct. Rep. 100, see, also, Rose's U. S. Notes], and *Gardner* v. *Michigan*, 199 U. S. 323 [50 L. Ed. 212, 26 Sup. Ct. Rep. 106].

A few cases decided prior to population becoming so congested in our municipalities took into consideration the slight property value of the garbage involved, but the overwhelming weight of authority is now to the effect that the police power in relation to the question of the collection and disposal of garbage is not limited by any such minor or inconsequential considerations. We find no modern authority

which would justify our holding that section 1 of Ordinance No. 146, fourth series, of the city of Sacramento, is invalid either as invading any property right or for any other reason suggested upon this hearing.

The writ is denied and the petitioner remanded.

Hart, J., and Finch, P. J., concurred.