[Crim. No. 70. Fourth Appellate District.—July 12, 1932.]

In the Matter of the Application of JOHN PEDROSIAN for a Writ of Habeas Corpus.

Swing & Swing for Petitioner.

William Guthrie, City Attorney, and Wardwell D. Evans, Deputy City Attorney, for Respondent.

Joseph R. Rensch as *Amicus Curiae.*

HARDEN, J., *pro tem.*—Petitioner is detained by the chief of police of the city of San Bernardino by virtue of a warrant of arrest issued by the police court of said city based upon a complaint filed therein charging him as defendant with the violation of the provisions of Ordinance No. 1456 of said city. The complaint alleges that the defendant has unlawfully engaged in the business of collecting and removing, and that he has unlawfully collected and removed, rubbish from the exclusive zone of said city without having a contract with or consent of the city so to do, at a time when there was in force and effect, pursuant to said ordinance, a contract between said city and the Johnson Rubbish Company granting to said company the exclusive privilege of collecting and removing such rubbish.

Important provisions of the ordinance are:

"Section 1. The word 'rubbish' shall be deemed to include all waste material and refuse of every character whatever collected or accumulated within the city of San Bernardino, except garbage . . .

"Sec. 5. That any contractor as herein defined, during the time that he shall fully and faithfully keep and perform all the terms, covenants and conditions of the contract awarded to him, shall have the exclusive right to collect, remove and dispose of all rubbish accumulated within said exclusive zone.

"Sec. 6. That it shall be unlawful for any person, firm or corporation to collect or remove any rubbish from said exclusive zone during the time any contract shall be in force for the collection and removal thereof pursuant to the provisions of this ordinance, save and except as herein provided."

It is made unlawful to deposit, collect or accumulate any rubbish in any open place within said exclusive zone save and except in receptacles provided for such purpose and approved by the chief engineer of the fire department. It is further provided that collections shall be made from the exclusive zone, at the expense of the person served, as frequently as required by and under the supervision and to the satisfaction of the sanitary inspector, but in any event at least once a week. Provision is made for the giving of a bond to the city by the contractor guaranteeing faithful performance of his contract. The owner or person in possession of property may remove therefrom rubbish naturally accumulating thereon in a vehicle owned or possessed by him. Any independent contractor may collect and remove rubbish accumulating upon any property in the city save and except from property embraced within the exclusive zone. Provision is made for the removal by the city semi-annually of rubbish from portions of the city other than the exclusive zone without charge. By the terms of another ordinance of the city it is provided:

"The word 'garbage', as used in this Ordinance, shall mean and include table refuse, swill and offal, and every accumulation of animal, vegetable and other matter that attends the preparation, consumption, decay or dealing in or storage of meats, fish, fowls, fruits, and shall include all

animal and vegetable refuse from kitchens and all household waste that shall have been prepared from or intended to be used as food, or shall have resulted from the preparation of food. Articles and things not hereinbefore enumerated are not included in the term garbage, and it is particularly provided that the following are not included in said term garbage, to-wit: dead animals over five pounds in weight, dish or waste water, paper and other combustible or inflammable material, crockery, glass, cans, tins, ashes, wire and sweepings.''

■ Pursuant to constitutional provision and its city charter, the city of San Bernardino has authority to make and enforce all such local, police, sanitary and other regulations as pertain to municipal affairs; and to define nuisances and provide for their removal.

■ The general purpose of the ordinance is to provide for the collection, removal and disposal of rubbish accumulating in the city of San Bernardino. Its particular feature is that it establishes an exclusive zone, comprising the business district of the city, and provides for the award of a contract to some person, firm or corporation granting the exclusive right, and imposing the duty, of collecting, removing and disposing of all accumulations of rubbish within said zone.

At the outset it is admitted by petitioner and the *amicus curiae* that if the same rules apply to an ordinance covering the collection, removal and disposal of rubbish as apply to an ordinance so dealing with garbage, the petitioner should be remanded. All such questions as are raised herein have been definitely settled by the decisions of our courts and of other courts adversely to petitioner's contentions as respects such collection, removal and disposal of garbage. Some of the decisions sustaining similar ordinances applicable to garbage are: *In re Santos,* 88 Cal. App. 691 [264 Pac. 281]; *In re Zhizhuzza,* 147 Cal. 328 [81 Pac. 955]; *Bishop* v. *City of Tulsa,* 21 Okl. Crim. 457 [27 A. L. R. 1008, 209 Pac. 228]; *Jansen Farms, Inc.,* v. *City of Indianapolis,* 202 Ind. 138 [72 A. L. R. 514, 171 N. E. 199]. Among the cases sustaining the validity of such an ordinance applicable to both garbage and rubbish are: *Porter* v. *City of Hot Springs,* 171 Ark. 1142 [287 S. W. 585]; *State* v. *Lovelace,* 118 Wash. 50 [203 Pac. 28]; *Smith* v. *City of Spokane,* 55

Wash. 219 [19 Ann. Cas. 1220, 104 Pac. 249]; *California Reduction Co.* v. *Sanitary Reduction Works,* 199 U. S. 306 [50 L. Ed. 204, 26 Sup. Ct. Rep. 100].

Petitioner relies chiefly upon two cases: *Landberg* v. *City of Chicago,* 237 Ill. 112 [127 Am. St. Rep. 319, 21 L. R. A. (N. S.) 830, 86 N. E. 638], and *Iler* v. *Ross,* 64 Neb. 710 [97 Am. St. Rep. 676, 57 L. R. A. 895, 90 N. W. 869].

In the case of *Landberg* v. *City of Chicago, supra,* for a consideration flowing to the city the ordinance granted a monopoly to an individual to collect and appropriate the manure accumulating in the city of Chicago. The holding to the effect that the ordinance was invalid is based upon the fact that the granting of a monopoly under such circumstances to remove and appropriate the manure accumulating in the city had no legitimate relation to the preservation of public health. The court recognizes the line of authorities holding such ordinances as the one under consideration here, where applicable to garbage, to be valid and distinguishes such cases from the one before the court. We think the decision is not authority in support of any contention of petitioner.

Said case of *Iler* v. *Ross, supra,* holds that such an ordinance is valid as respects its application to garbage but invalid as to rubbish. The decision that the portion of the ordinance dealing with rubbish is invalid turns upon the point that provision is made for its collection before its accumulation in such quantities as to become a nuisance and that said portion of the ordinance has no just relation to the preservation of public health or safety. It further holds that the ordinance grants an unlawful monopoly for the removal of substances not nuisances *per se.* Accordingly, it is earnestly contended here that the rights of the owners of rubbish accumulating in the city of San Bernardino, of petitioner as an independent contractor, and the rights and duties of the city in the premises, are so vastly different from the situation where garbage alone is the subject of such legislation as to require a holding that the ordinance here in question is void. It is urged that garbage is a nuisance *per se;* whereas rubbish, unless allowed to accumulate in large quantities, is not.

Perhaps the mere lapse of time since the rendition of the decision of *Iler* v. *Ross, supra,* in 1902, would work a change

in the opinion of that court. Certainly since then great strides have been made in the handling of all problems of public health and safety. No one would willingly go back to the days of the open toilet, the livery-stable, the hog-pen, or the alley overflowing with its filth, in the thickly populated portions of our cities. With modern methods being applied in all phases of community life, the people are not expected now to dull their sensibilities and endure the offenses which were formerly accepted as of necessity. If, as is stated, garbage is a nuisance *per se*, the same should be said of much of the rubbish accumulating in a city. One need not be a specialist to make an inspection. Little observation will reveal that much filth, withheld from the garbage pail out of regard for the well-being of the hogs fed upon the contents, finds its way to the rubbish pile and the trash can. Considerations both of public health and safety suggest its prompt removal.

Particular stress is laid upon the claim that unless rubbish is allowed to accumulate in large quantities it is not a danger to public health or safety. The evident purpose of the ordinance was to *prevent* its accumulation in large quantities. To our minds, the exercise of the police power in the timely prevention of a nuisance is preferable to its use for purposes of abatement after a nuisance has come into existence. That said power may be lawfully exercised for such purpose is well established. In *French* v. *Davison*, 143 Cal. 658 [77 Pac. 663], the act of 1899 requiring the vaccination of children was held to be valid and within the police power of the state. The case was followed in *Wallace* v. *Regents of the University of California*, 75 Cal. App. 274 [242 Pac. 892]. Lands have been drained pursuant to police power as conducive to public good and in the interest of public health (*Laguna Drainage Dist.* v. *Charles Martin Co.*, 144 Cal. 209 [77 Pac. 933]). Under that power the burial of bodies within the city limits of San Francisco was prevented (*Odd Fellows' Cem. Assn.* v. *San Francisco*, 140 Cal. 226 [73 Pac. 987, 988]). In that case it was said: "Whenever a thing or act is of such a nature that it may become a nuisance, or may be injurious to the public health, if not suppressed or regulated, the legislative body may, in the exercise of its police powers, make and enforce ordinances to regulate and prohibit such

act or thing, although it may never have been offensive or injurious in the past." The following general statement is found in 12 Corpus Juris, 916: "Statutes and ordinances may be enacted for the prevention of, and protection from fires, as by the establishment of limits within which buildings of wood or other combustible materials may be erected, . . . regulating the method of installing electric wires, requiring reasonable fire escapes, and even authorizing the destruction of buildings in the· path of a conflagration." "The police power is to the public what the law of necessity is to the individual. It is comprehended in the maxim *Salus populi suprema lex.* It is not a rule; it is an evolution. . . . The power has always been as broad as the public welfare." (*State* v. *Mountain Timber Co.,* 75 Wash. 581 [L. R. A. 1917D, 10, 135 Pac. 645].) "The police power . . . is coextensive with the necessities of the situation." (*In re Santos,* 88 Cal. App. 691–696 [264 Pac. 281, 283].) All property· is held subject to the proper exercise of the police power. (*Ex parte Quong Wo,* 161 Cal. 220 [118 Pac. 714].) "The police power, as such, is not confined within the circumscription of precedents, resting upon past conditions which do not cover and control present-day conditions obviously calling for revised regulations to promote the health, safety, morals or general welfare of the public. . . . As a commonwealth develops politically, economically and socially, the police power likewise develops, within reason, to meet changed and changing conditions. What was at one time regarded as an improper exercise of the police power may now, because of changed living conditions, be recognized as a legitimate exercise of that power." (*Miller* v. *Board of Public Works,* 195 Cal. 477, 484 [38 A. L. R. 1479, 234 Pac. 381, 383].) The California cases most nearly in point on the facts are the cases of *In re Santos* and *In re Zhizhuzza,* already cited, where similar ordinances designed to prevent nuisances in the handling of garbage were upheld.

Petitioner contends that the definition of rubbish as found in the ordinance is uncertain for the reason that it is sufficiently comprehensive to include material of value over which the police power of the city does not extend. We think there is no uncertainty in the definition. Under the ordinance rubbish is defined as "waste material and

refuse of every character collected or accumulated within the city, except garbage''. The provisions of another ordinance show what substances are excluded as garbage. Petitioner is not concerned with the possibility of disputes between the citizens of San Bernardino and the official rubbish collector as to what constitutes rubbish. We may repeat what was said in *In re Zhizhuzza, supra,* to the effect that the owners of property referred to as being injuriously affected are not complaining here. There is nothing in the ordinance which requires the abandonment of any property. So long as an owner desires to retain his property he may do so; and there is nothing to prevent him from making a *bona fide* sale of it. But he may not accumulate and retain large quantities of rubbish. When refuse has been deposited for collection as rubbish by the owner, it may be regarded as abandoned by him. The definition of rubbish as waste material or refuse comprehends an abandonment of the property as valueless. Refuse is generally defined as ''that which is refused or rejected; anything worthless or useless; trash; debris''.

While not involved directly in this proceeding, respondent has asked for an expression of our opinion upon the question of the validity of contracts entered into between petitioner and persons residing or doing business within said exclusive zone for the collection, removal and disposal of their rubbish. It is our opinion that, while a *bona fide* sale of property is not prevented by the ordinance, any contracts designed either directly or indirectly to permit the collection, removal or disposal of rubbish from within the exclusive zone by any person other than the official rubbish collector would be illegal and void.

While considerations of health were doubtless in mind, the evidence is before us in the provisions of the ordinance that it was designed particularly to meet the fire hazard. By its provisions it requires that rubbish accumulating in open places in the exclusive zone be kept in receptacles to be provided for such purpose and approved by the chief engineer of the fire department; provides for the frequent removal and disposal of such rubbish; provides for an official rubbish collector under bond to the city for the faithful performance of his duties under the contract; provides that in bidding for the contract he

specify the nature and kind of conveyances to be used; and generally gives to the city complete control over the whole subject of the collection, removal and disposal of rubbish within the exclusive zone. The city impliedly found that in the usual course of affairs in the business district, if not controlled by provisions of such an ordinance, rubbish would accumulate in such quantities as to become a menace to public health and safety. If reason and experience do not show clearly that such finding was without substantial basis, then any action taken by the city in adopting suitable means to avoid the hazard would be lawful. There is nothing before us which would warrant a court in holding that there was no sufficient basis for legislative action to meet the situation. There is the question of whether the provisions of the ordinance are designed to serve the purpose. Just what methods were to be employed was, of course, a question for determination by the city. The ordinance establishes appropriate means for the handling of rubbish and to prevent its becoming a nuisance.

The cases hereinabove cited and many others that might be referred to dispose of contentions that such an ordinance when applied to the handling of garbage is open to justifiable attack upon the ground that such private property is not subject to control by the exercise of the police power, or that such ordinance grants an unlawful monopoly, or that it unlawfully authorizes the taking of property without due process of law, or that it improperly deprives one of the right to pursue a lawful occupation. Neither of said grounds of attack may be properly urged against the ordinance under consideration here. The reasons sustaining the validity of such an ordinance covering the subject of garbage as a proper measure in the preservation of health are equally applicable to an ordinance dealing only with rubbish. The police power may be exercised as well in guarding against the hazard of fire as in preventing the spread of disease. Here, considerations both of public health and safety are involved. We need not state at length the reasons advanced by the various courts in holding similar ordinances do not violate any of said constitutional rights of the parties involved. Such reasons are comprehended in the statement that where particular legislative action is lawfully pursuant to the police power any loss

occasioned by the invasion of individual rights in the exercise of that power is *damnum absque injuria*. In such case individual constitutional rights must yield in favor of the general welfare.

The court is taking no great step in upholding this ordinance as a valid exercise of the police power. If it be true, as is suggested, that in its enactment the city of San Bernardino has broken new legislative ground, or if in sustaining such legislation we are giving judicial approval in a case for which there is no precedent exactly in point, such advances are in pursuance of what can be expected in the working out of public rights under changing conditions.

The writ is discharged and the petitioner is remanded to the custody of the chief of police of the city of San Bernardino.

Barnard, P. J., and Marks, J., concurred.