## Commonwealth v. Katz

*Charles H. Coffroth*, for Commonwealth.
*Fike & Cascio*, for defendant.

LANSBERRY, P. J., August 27, 1962.—This appeal from the decision of the justice of the peace presents

the issue of the legality and applicability of an ordinance adopted by the Somerset Borough Council regulating the collection, removal and disposal of garbage and refuse in the Borough of Somerset. Following the allowance of the appeal by the court, the issues were submitted on an agreed statement of facts and thereafter oral arguments heard and briefs submitted.

On April 10, 1961, the Borough Council of Somerset Borough, Somerset County, Pennsylvania, adopted ordinance no. 820, entitled:

"An Ordinance Relating to Sanitation and the Promotion of Public Health and Welfare in the Borough of Somerset; Regulating the Collection, Removal and Disposal of Garbage and Refuse Within the Borough; Providing for the Award of a Contract From Time to Time for the Collection, Removal, and Disposal Thereof; Authorizing the Council to Make Additional Regulations Pertaining Thereto; Repealing all Ordinances or Parts of Ordinances Inconsistent Herewith, and Prescribing Penalties for the Violation Hereof."

This ordinance consisting of 18 sections contains various definitions, vests authority in the borough council for establishing and supervising the activities under the ordinance including the landfill disposal site, the necessary contracts, rates to be charged and received, penal clauses for violations of the ordinance and further provides for an exclusive license for collecting and disposing of the garbage and refuse in Somerset Borough.

Section 1 of the ordinance contains four definitions as follows:

"Section 1. Definitions. The following words and terms, as used in this Ordinance shall have the following meaning: (a) The term 'Garbage' shall mean all putrescible wastes, except sewage and body waste and carcasses of dead animals, including animal and vegetable offal, and shall include all such substances from

all public and private establishments within the Borough.

"(b) The Term 'Refuse' shall mean all non-putrescible wastes and shall include all such substances from all public and private establishments within the Borough.

"(c) The term 'Collector' shall mean the person, firm, association, partnership or corporation granted an exclusive contract for the collection, removal and disposal of garbage and refuse within the Borough of Somerset.

"(d) The term 'Person' shall mean every natural person, association, partnership, or corporation."

Section 3 specifically provides for the awarding of a contract by council "for the exclusive right to collect, remove, and dispose of garbage and refuse" and further provides "Such contract shall regulate and fix the prices charged to persons utilizing the services of the collector, and establish the frequency of garbage collection."

Section 7 details the regulations for the handling of the garbage and refuse and is as follows:

"Section 7. Every person desiring the collector to collect, remove, and dispose of garbage and refuse shall provide a water tight, rust resistant metal container or receptacle into which garbage and food tins or containers shall be deposited. Said receptacle shall have a tight fitting lid with a handle, and shall be provided with a handle or handles so that it may be carried or transported. All garbage shall be drained free of excess liquid, and securely wrapped in paper before disposal. All paper, pasteboard and cardboard, and all other garbage and refuse of any kind or nature which is liable or likely to be carried away by wind from the disposal site and scattered upon other lands shall be securely packaged, bundled, or tied so that it will not be blown or carried away by the wind. The carcasses or

entrails of dead animals shall not be placed in garbage receptacles nor taken to the aforesaid dump for disposal."

Section 9 provides for an exclusive collector as follows:

"Section 9. No person except the Contractor shall collect garbage or refuse from any other person in the Borough of Somerset for conveyance and disposal; provided, however, that this section shall not apply to any person who shall dispose of his own garbage or refuse, having first provided himself with a proper vehicle in which the same can be conveyed or transported in such a manner as not to be a source of annoyance or unpleasant odors, and so as not to leak, drip, or to be scattered about upon streets or alleys of the Borough."

Section 10 contains the applicable penal section of the ordinance:

"Section 10. Any person in control of any premises who permits or hires any person except the collector or the owner or tenant of any premise under his control to dispose of or remove garbage or refuse, or any person except the collector, owner or tenant who disposes of or removes garbage or refuse from any premises in the Borough of Somerset shall be guilty of violation of this Ordinance."

The regularity of the collection, both residential and commercial, is contained in section 13 as follows:

"Section 13. The collector shall collect residential, household, or domestic garbage and refuse at regular intervals of one week, and commercial, industrial or institutional garbage and refuse shall be collected at regular intervals which will prevent the formation of nuisances, public health hazards, odors, flies and rodents. No interval between regular collections shall be greater than one week."

In conformity with the provisions of the ordinance the exclusive contract for the collection of garbage and

refuse in Somerset Borough was awarded to the Pyle Contracting & Excavating Company, Inc.

Defendant herein, Irving Katz, is the chief executive of the Somerset Shirt & Pajama Company engaged in the business of manufacturing of pajamas and textile products in Somerset Borough. The plant is wholly located and operated within the confines of the borough. In the conduct of the manufacturing operation large quantities of various cloth materials are received in corrugated cardboard cartons, large and small, secured by steel bands and other quantities of cloth are received in various types of paper wrappings. As a result of the operations of this manufacturing business, patches of cloth in many and various sizes and shapes which are known to the trade as "scraps" fall from the cutting tables.

Effective January 1, 1962, the Somerset Shirt & Pajama Company, Inc., contracted with the Somerset Salvage Company, operated by Harry B. Maust, for the collection and removal of the empty corrugated cartons, the steel bands, paper wrappings and cloth scraps from the manufacturing establishment. On January 26, 1962, Harry B. Maust, after loading onto his truck these items of corrugated cardboard, steel bands, wrapping paper and cloth scraps for the purpose of removing them from the premises of the Somerset Shirt & Pajama Company was arrested as was defendant, Irving Katz, by the Chief of Police of Somerset Borough and charged with a violation of the ordinance. After hearing, defendants were both found guilty by the justice of the peace and each was sentenced to pay a fine of $10 and costs of prosecution.

Counsel for all parties have submitted to the court four questions of law which they assert present the pertinent issues for determination as follows:

1. Does section 1 (b) of the ordinance, defining "refuse" apply to the discarded materials which are the subject of these prosecutions?

2. Does the borough have the legal power to prohibit the collection and removal of such materials from any premises in the borough by a person other than the owner or tenant of the premises or Pyle Contracting and Excavating Company, Inc., the authorized collector?

3. If so, may the borough grant an exclusive garbage and refuse collection and removal contract on the basis of rates to be negotiated by the contractor and commercial establishments for such collection and removal, where such rates are subject to review and control by borough council whose decision is stated by the ordinance to be final, and where such system of negotiated rates was limited to certain commercial establishments and was adopted because in the opinion of borough council it was impossible and impractical to otherwise establish such rates for such services, because of the wide divergence of commercial customer requirements as to quantities of garbage and refuse and the required frequency of collection?

4. Are defendants, by their failure to file an appeal or complaint under article X, sec. 1010, of the Borough Code of May 4, 1927, P. L. 519, as amended, 53 PS §46010, precluded from questioning the legality of the ordinance on either of the grounds specified in paragraphs 2 and/or 3, supra?

This ordinance was adopted on the authority of section 1202 of The General Borough Act of May 4, 1927, P. L. 519, 53 PS §46214, which empowers the borough: "To make regulations for the care and removal of garbage and other refuse material, including the imposition and collection of reasonable fees and charges therefor, and to prescribe fines and penalties for the violation of such regulations." This is an undoubted grant of the police power by the legislature to the several boroughs and the adoption of this ordinance by the council of Somerset Borough is an exercise of that police power. The validity test of an exercise of a police power is

reasonableness and such an exercise of the police power either in a law enacted by the legislature or an ordinance adopted by a borough council may not be arbitrary, unreasonable or patently beyond the necessities of the case and the methods employed to carry out and exercise that police power must have a real and substantial relation to the object sought to be obtained: Commonwealth v. Zasloff, 338 Pa. 457, and Howarth v. Gilman, 164 Pa. Superior Ct. 454. Moreover, an ordinance adopted by a borough council like an act adopted by the legislature under the exercise of the police power is presumed to be constitutional and valid and casts the burden upon those who challenge it to demonstrate and establish the illegality or unreasonableness of the ordinance or statute as to him: William Laubach & Sons v. Easton 347 Pa. 542. And further, where there is controversy as to the enactment relating to its propriety as well as to the wisdom of the legislation, that propriety and wisdom is for the legislative body rather than for the courts: Bell Telephone Company of Pennsylvania's Appeal, 138 Pa. Superior Ct. 527.

While it is true that reasonableness is the test of the validity of the legislation itself, it is equally true that necessity is the basis for the legislative enactment under the police power granted to legislative bodies. As observed in the Lord Appeal, 368 Pa. 121, the police power may be exercised only when it is necessary to preserve the health, safety, morals or general welfare of the people in the particular field or area of the enactment. The exercise of this police power by a legislative body does not permit an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property notwithstanding that the legislative enactment may be labelled as one for the preservation of the health, safety and general welfare of the people. If this element of necessity is wanting then the constitutional requirements have not been met and the

enactment may not stand: Hertz Drivurself Stations, Inc. v. Siggins, 359 Pa. 25.

Having observed the overall purpose and plan as well as the specific provisions of the ordinance and having noted the basic principles of law upon which this ordinance is grounded and circumscribed, it is necessary to determine its applicability to the specific facts in this record. The answer to the first question and issue as submitted by counsel for both parties as well as the applicability of this ordinance to the instant facts depends upon the precise definition of "refuse" as used in this ordinance.

Unfortunately, the definition of "refuse" contained in the ordinance is insufficient. From it we know only that refuse is a waste which is not putrid or likely to become putrid.

An examination of the dictionary definitions as well as those contained in the judicial opinions demonstrate that, in the area under consideration, refuse and waste are synonymous. Webster's New International Dictionary, 2d ed., p. 2880, defines waste both as noun and as an adjective. In the latter category the following definition is given:

"4. Thrown away as worthless after being used or spent; lost or unused during a process, as by spoiling, failure, leakage, etc.; thrown away or aside after being produced as defective, or used merely as a preliminary model, or in excess of the needed or usable quantity; allowed to escape unused, as not needed; useless; refuse; as, a waste product."

And as a noun, waste is defined in the following language:

"8. That which has no original value or no value for the ordinary or main purpose of manufacture; parts or fragments of original stock not of a size suitable for use in making the product for which the stock was secured, but which may be suitable for making another

product, in which case the remaining parts or fragments are waste; damaged or defective articles of manufacture; superfluous or rejected matter; refuse."

The same authority defines the word "refuse", a noun, as follows:

"That which is refused or rejected as useless; worthless matter; rubbish; scum; dregs; leavings; etc. In the U. S. the term refuse, with reference to waste of municipalities is usually used to include practically all waste except garbage and ashes; in England, all waste except sewage.

Syn.—junk, dross, litter, trash, lumber."

In the monumental work of Corpus Juris Secundum, Vol. 76, p. 506, the word "refuse," the noun, is defined "as meaning that which is refused or rejected; waste or useless matter; the worst or meanest part; rubbish; trash; debris; scum, leavings, etc."

This authority further asserts: "It has been held synonymous with waste", and then continues: "The adjective 'refuse' is defined as meaning refused; rejected. As an adjective the word is also defined as meaning worthless; useless; waste."

Black's Law Dictionary, 4th ed., defines "refuse", a noun, as follows:

"That which is refused or rejected as useless or worthless; worthless matter, rubbish, scum, leavings."

Judicial consideration has been given in various jurisdictions and under various factual circumstances to the words "waste" and "refuse". In Baltimore & Ohio R. Co. v. Carnegie Steel Co., in the District Court for the Western District of Pennsylvania, 251 Fed. 682, Judge Orr held that the verb "to waste" as used in that case dealing with slag, means, "to throw away" and further stated, " 'refuse' has been defined to 'be that which is refused or rejected as useless or worthless'." In a garbage ordinance case, Judge Mason in Kirksey v. City of Wichita, in the Supreme Court of

Kansas, 103 Kan. 761, 175 Pac. 974, held that the words "rejected" and "waste" were synonymous. In the Supreme Court of New Jersey in Stern Holding Co. v. O'Connor, 119 N. J. L. 291, 196 Atl. 432, the court in a garbage deposit case involving a lease of premises held that the words "waste" and "refuse" were synonymous; and in State v. Howard, 72 Me. 459, the words "waste" and "refuse" were similarly held as synonymous. In the case of Building Com'r. of Medford v. C. & H. Co., in the Supreme Judicial Court of Massachusetts, 319 Mass. 273, 65 N. E. 2d 537, the court said: "Rubbish in this regulation is synonymous with refuse, and like the term refuse should be construed to include ashes produced in dwellings." To the same effect is Haley v. Boston, 191 Mass. 291, 77 N. E. 888. In the case of Coal & Delivery Co. v. Howard, 265 Fed. 566, in the Circuit Court of Appeals, that court said with reference to the meaning of refuse "rejected; hence, left as unworthy of acceptance; of no value; worthless. . . ." In the proceedings In re Pedrosian, 124 Cal. App. 692, 13 P. 2d 389, the court said "Waste material or refuse comprehends an abandonment of the property as valueless."

From the foregoing authorities, it is manifest that the words "refuse" and "waste" are not only synonymous but that they include many items commonly classed as rubbish, junk, litter, trash and usually rejected and worthless matter.

From all the foregoing authorities it is further apparent that there are two basic elements which are characteristic of waste or refuse; those elements or characteristics are first, worthless or useless, and second, rejected.

The difficulty in the application of the definitions as we have found them to be in the authorities is complicated by the insufficiency of the definition in the ordinance in its failure to designate who and by what authority the two elements of uselessness or worthless-

ness and rejection are determined and applied to the specific item involved. Otherwise stated, who is to determine and designate the many and various items to be classified as worthless and rejected. Is it the mayor of the borough, or, is it the town council, or, is it the chief of police, or, is it the head of the bureau of sanitation, or, is it the collector of garbage and refuse under the exclusive contract?

Counsel for the Borough of Somerset recognized this problem. After pointing to the objects of the ordinance, namely, a uniform system for the collection and disposal of garbage and refuse in and from Somerset Borough, the contention is asserted:

"It is obvious that the Borough loses its control over their removal and collection if defendant Maust and others with similar claims are permitted to remove and dispose of them (refuse or waste), and the Borough is thus deprived of its ability to make certain that these articles will not litter the streets of the community. It may reasonably be supposed that the Borough Authorities anticipated the possible wide spread use and disposal of discarded materials by scavengers and that such claim for 'useful' salvage may be made in innumerable situations by innumerable persons, thus enlarging the problem of control of cleanliness to the point where the centralized system is defeated and undermined. What may be harmless and innocuous when occurring in a few isolated incidents, may when multiplied be grossly defeating. And this is the larger view, the 'big picture', which those responsible for the government of many must bear in mind, but which the individual in governing himself may often ignore with impunity. Cleanliness requires jurisdiction and control without the possibility of defeating exceptions, which means that these materials should be 'waste' and under the control and jurisdiction of the Borough rather than Maust, because health and cleanliness require it."

It will be observed that in the view and contention of the proponents of the ordinance as a logical concomitant, it is the borough authorities who shall determine and judge what is rejected as useless or worthless matter and thereby become the subject of removal by the exclusive refuse collector. This is the essence of "under the control and jurisdiction of the Borough." The concept of salvageable refuse is not admitted or conceded; if it were the prosecution would not have been instituted.

The contention that the "jurisdiction and control without the possibility of defeating exceptions" over materials which should be classified as waste must be in the borough in order to insure cleanliness, is neither reasonable nor sanctioned in law. The determination of the time when a nonputrescible item is rejected as useless or worthless is and must be made by the possessor or owner thereof. The word rejected itself implies this basic element. Reject is defined by Webster as "2. To refuse to have or use; to cast or throw away, as useless, unsatisfactory; to discard; relegate." Who but the possessor or owner may or can say when an item is thrown away and thus rejected as being useless or discarded? To state the question compels the only reasonable and lawful answer. A homely, simple illustration will quickly demonstrate. In almost every household in Somerset Borough there frequently occurs an accumulation and surplus of unused and unnecessary newspapers and magazines, which admittedly are non-putrescible items. To the owner himself this accumulated surplus is useless and worthless except for the legitimate salvage value it has in the possession of some other person. By prearrangement this surplus is picked up and hauled away by the Salvation Army personnel and by that organization salvaged and used in its various enterprises. Certainly it must be left to the determination of the householder to say when those

newspapers and magazines are fully and completely rejected as useless. Why should it be left to some person designated by the borough authorities to determine this fact of rejection? Obviously there is no reason why it should be, and yet, this is the only logical conclusion to be drawn from the contention advanced. The element of rejection is as integral in determining what is refuse as is the element of uselessness or worthlessness and these elements can only be determined by the possssor or owner of the non-putrescible matter. Admittedly, if and when the possessor or owner fails or neglects to determine this factor and the non-putrescible matter becomes a nuisance or a health and cleanliness hazard and problem, then the determination must be made by those charged with the responsibility of preserving health and cleanliness in the neighborhood but that is not the factual situation here presented.

This element of rejection by the owner of the item is amply supported by judicial authority. In Kirksey v. City of Wichita, supra, the court said, inter alia:

". . . but the word 'waste' carries practically the same implication [as rejection], indicating material that has lost its value for the purposes for which it was handled by the owner, and been cast aside. Sound judgment will be required in interpreting any definition that may be adopted, in order that the regulation may have its intended effect."

And further the court said: "It does not follow that a dealer in perishable goods, who finds himself with a quantity of them on hand which are so defective or damaged as to be unsalable in the ordinary course of business, may not sell them for some other use. But if he places them with ordinary waste matter he elects to treat them as garbage and justifies their being so treated by others."

In the case of Gorman v. City of Cleveland, 159 N. E. 136, (Ohio App.) the court said:

"We find that under a Georgia statute that such a term and its synonyms mean anything such as dust, ashes or rubbish, which become the property of scavengers by the consent of the owner. Rubbish is usually articles of any nature for which the owner has no use, and may be called rubbish, garbage, offal, debris, or any other name that is suited to the worthless articles."

Judge Baldwin of the Supreme Court of Errors in State v. Orr, 68 Conn. 101, as far back as 1896 in construing a councilmanic garbage ordinance succinctly emphasized the point in the following language:

"Construing this ordinance with the strictness properly applicable to municipal legislation of a penal nature, the term 'refuse matter' can only extend to matter which is in fact noisome, or which has been refused and rejected by the owner as worthless."

From the analysis of the authorities above discussed and considered, it is manifest that the definition of refuse in the ordinance adopted by the Somerset Borough Council as "all non-putrescible wastes which shall include all such substances from all public and private establishments within the Borough", must be defined to mean and include all non-putrescible waste generally regarded and classified as rubbish, junk, trash and similar designations when so determined and thus rejected by the possessor or owner thereof as useless or worthless to him and when the same is not permitted, allowed or suffered to become a nuisance or deleterious to the health and cleanliness of the neighborhood by an accumulation of the same. Thus it will be seen that the application of the ordinance as to what is refuse must be determined by three elements or factors: the item must be considered useless or worthless; it must be rejected, and, that rejection must be in the first instance determined by the possessor or owner. When

those three elements or factors occur, the item is refuse and a subject for inclusion under the ordinance.

Applying this definition of refuse to the facts in this record, it becomes crystal clear that Mr. Katz not having rejected the corrugated cardboard, steel bands, wrapping paper and patches of cloth as useless or worthless to him because of their salvage value and not having allowed the same to accumulate to the detriment of the health and cleanliness of the neighborhood, he is not guilty of violating the ordinance nor is Mr. Maust guilty of violation of the ordinance in accepting those salvageable items from the Somerset Shirt & Pajama Company.

In view of the inescapable conclusion and determination as to the first issue submitted for decision we need not and do not make any firm decision as to the other issue submitted except to say that the fourth issue presented must be answered in the negative, and accordingly enter the following:

*Decision of Court*

Now, August 27, 1962, the above named defendant, Irving Katz, is found and adjudged to be not guilty, the decision of the justice of the peace is reversed and the fine and costs heretofore paid are ordered remitted.